UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EILEEN A. CLINTON, on behalf of herself and as
Administratrix of the Estate of William A. Champagne, Jr.,

                             Plaintiff,

           - against -                          05-CV-9907 (CS)

BROWN & WILLIAMSON HOLDINGS, INC., as     **MEMORANDUM DECISION**
successor by merger to The American Tobacco Company,     **AND ORDER**
and PHILIP MORRIS, USA, INC.,

                             Defendants.
------------------------------------------------------------------------x

Appearances:

Jerome H. Block, Esq.
Amber R. Long, Esq.
Levy, Phillips & Konigsberg, LLP
New York, New York
*Counsel for Plaintiff Eileen A. Clinton*

Thomas J. Quigley, Esq.
Winston & Strawn LLP
New York, New York
*Counsel for Defendant Philip Morris USA, Inc.*

Seibel, J.

      Before the Court is Plaintiff's Motion, filed on February 13, 2009, to Vacate or Modify the July 24, 2007 Order Granting Summary Judgment to Defendants on Plaintiff's Marlboro Lights Fraud Claim.  (Doc. 84.)

**I.  Background**

      Only the facts and procedural history relevant to the instant Motion are set forth below; familiarity with the remainder of the facts and procedural history of this case is assumed. William A. Champagne, Jr. began smoking in his early teenage years.  (Compl. ¶ 4.)  He smoked

-1-

Lucky Strike cigarettes, manufactured by the predecessor of Brown & Williamson Holdings, Inc. ("B&W"), from the early 1960s to 1976, then Marlboro cigarettes, manufactured by Philip Morris, from 1976 to 1986, and finally Marlboro Lights cigarettes, also manufactured by Philip Morris, from 1986 to 2003.  (*Id.*; Decl. of Jerome H. Block in Opp'n to Def.'s Mot. for Summ. J. ("Block Decl.") ¶¶ 20-22.)  In November 2004, Champagne was diagnosed with lung cancer, which caused his death on June 25, 2004, at the age of fifty-three.  (Compl. ¶¶ 2, 7.)  Based on these facts, Plaintiff Eileen Clinton, the widow of Champagne, asserts against Defendants Philip Morris and B&W a number of state law causes of action, including:  failure to warn up to July 1, 1969, fraudulent concealment up to September 11, 1968, design defect, fraud in marketing Marlboro Lights, and a claim for punitive damages.  (Block Decl. ¶¶ 6-7.)

Defendant filed a Motion for Summary Judgment on October 23, 2006.  (Doc. 34.)  On July 24, 2007, the Honorable Charles L. Brieant[1] issued a Memorandum Decision and Order (the "July 24, 2007 Order") granting Philip Morris's Motion in its entirety.  (Doc. 64.)  On December 23, 2008, Plaintiff served a Motion to Vacate or Modify the July 24, 2007 Order Granting Summary Judgment to Philip Morris on Plaintiff's Marlboro Lights Fraud Claim on the basis that the United States Supreme Court's recent decision in *Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008), constitutes a change in controlling law that compels a different result.  (Doc.  84.)  Philip Morris served its Opposition to the Motion on January 26, 2009 (Doc. 87), and Plaintiff served her Reply on February 13, 2009 (Doc. 86).

---

[1] Judge Brieant passed away in July 2008, and the case was reassigned to me on August 5, 2008.  (Doc. 81.)

**II.  Discussion**

      **A.  Federal Rule of Civil Procedure 54(b)**

"The Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment."  *Richman v. W.L. Gore & Assocs.*, 988 F. Supp. 753, 755 (S.D.N.Y. 1997).  Federal Rule of Civil Procedure 54(b) provides, in relevant part, that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities."  Fed. R. Civ. P. 54(b). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); *accord In re Ski Train Fire*, 224 F.R.D. 543, 548 (S.D.N.Y. 2004).

      In this District, a motion to reargue, modify or vacate a prior decision must comply with Local Civil Rule 6.3, which "requires a party to submit a motion to reconsider a decision within ten days of the docketing of the Court's original determination, unless the movant presents a compelling reason to ignore the time limit."  *Richman*, 988 F. Supp. at 755.  The court retains "discretion to consider a motion for reargument notwithstanding the movant's failure to comply with Local Rule [6.3]'s requirements, but it will only exercise this discretion when justice so requires."  *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92-CV-3024, 1997 U.S. Dist. LEXIS 12839, at *13-14 (S.D.N.Y. Aug. 27, 1997).  Justice requires the exercise of this discretion when, for example, there is an intervening change in controlling law, such as the

-3-

issuance of a relevant United States Supreme Court decision.  *See Filler v. Hanvit Bank*, No. 01-CV-9510, 2003 U.S. Dist. LEXIS 12836, at *2 (S.D.N.Y. July 23, 2003) (vacating prior orders where recent United States Supreme Court decision altered outcome); *Richman*, 988 F. Supp. at 755, 759 (modifying prior opinion where Supreme Court decision constituted intervening change in controlling law).

### B.  Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  On a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party "to present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2); *see Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). "Where a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

### C. July 24, 2007 Order

In the July 24, 2007 Order, Judge Brieant granted Philip Morris's Motion for Summary Judgment with respect to all of Plaintiff's claims, including Plaintiff's claim of fraud in marketing Marlboro Lights. Plaintiff alleges that Philip Morris gave to the public the false impression that Marlboro Light cigarettes were safer than regular Marlboro or other filtered cigarettes because they delivered a lower amount of nicotine and tar. (Compl. ¶¶ 183-86.) Philip Morris purportedly marketed Marlboro Lights as a safer alternative to regular cigarettes despite knowledge that Marlboro Lights delivered lower amounts of nicotine and tar only when smoked by a smoking machine,[2] which smokes every cigarette in a uniform fashion, but not when smoked by people, who tend to compensate for lower levels of nicotine and tar by subconsciously changing their behavior by, for example, covering ventilation holes or taking deeper puffs. (*Id.* ¶¶ 185-88.) Indeed, Plaintiff argues that Philip Morris purposely made Marlboro Lights with low resistance to draw so that smokers could easily inhale more deeply on

---

[2] The Federal Trade Commission ("FTC") developed the Cambridge Filter Method, which weighs and measures in a standardized fashion the nicotine and tar collected by a smoking machine. The smoking machine takes uniform thirty-five milliliter puffs of two seconds' duration every sixty seconds until the cigarette is smoked to a certain butt length. *Altria Group*, 129 S. Ct. at 542 n.2.

the cigarette, thus receiving about the same amount of nicotine and tar as they would from regular cigarettes.  (Block Decl. ¶¶ 156-57.)

Judge Brieant granted Philip Morris's Motion for Summary Judgment with respect to this claim on the basis that it was expressly preempted by Section 5(b) ("Section 5(b)") of the Federal Cigarette Labeling and Advertising Act ("Labeling Act"), which provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."  15 U.S.C. § 1334(b).  In making his determination, Judge Brieant relied on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 519-20 (1992), in which the United States Supreme Court held that Section 5(b) "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions."  A plurality of the Court held that courts "must fairly but – in light of the strong presumption against pre-emption – narrowly construe the precise language of § 5(b)," and consider each common law claim at issue individually to determine whether it is preempted.  *Id.* at 523.  The relevant inquiry is "whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion."  *Id.* at 524 (internal quotation marks omitted).  The plurality found that the petitioner's fraudulent misrepresentation claim, which was based on the theory that the cigarette manufacturer's advertising neutralized the effect of federally-mandated warnings, was expressly preempted because it was predicated on a state law prohibition against statements in advertising and promotional materials that minimize the health dangers of smoking.  The plurality found that

such prohibition was merely the converse of a state law requirement that warnings be included in advertising and promotional materials. *Id.* at 527. In contrast, the plurality found that petitioner's other fraudulent misrepresentation claim, which was based on the cigarette manufacturer's alleged intentional misrepresentation or concealment of material facts, was not preempted because it was predicated on a general obligation not to deceive, rather than on a duty "based on smoking and health." *Id.* at 528-29.

Judge Brieant found that Plaintiff's claim was akin to the fraudulent misrepresentation claim preempted in *Cipollone*. Relying on a number of federal court decisions, including *Good v. Altria, Inc.*, 436 F. Supp. 2d 132, 151 (D. Me. 2006), *vacated*, 501 F.3d 29 (1st Cir. 2007), *aff'd*, 129 S. Ct. 538, Judge Brieant held that Plaintiff's claim of fraud in marketing Marlboro Lights was preempted because Plaintiff sought to impose, under state law, a prohibition based on smoking and health with respect to advertising or promotion. Specifically, Plaintiff sought to "prohibit the use of terms that describe the FTC-approved testing process, because they give the 'false impression that Marlboro Lights would provide the smoker with less tar and nicotine.'" (July 24, 2007 Order 19 (quoting Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 37).) Accordingly, Judge Brieant granted summary judgment for Philip Morris on Plaintiff's fraud in marketing Marlboro Lights claim.

### D. *Altria Group v. Good*

Plaintiff now seeks to modify or vacate the July 24, 2007 Order on the ground that the Supreme Court's decision in *Altria Group* represents a change in controlling law. In *Altria Group*, plaintiffs who smoked light cigarettes for over fifteen years claimed that defendant

cigarette manufacturers violated the Maine Unfair Trade Practices Act ("MUTPA")[3] by fraudulently conveying the message that their light cigarettes delivered less nicotine and tar to consumers than regular brands, despite the cigarette manufacturers' knowledge that this message was false.  *Altria Group*, 129 S. Ct. at 541.  Like Plaintiff in the instant action, plaintiffs in *Altria Group* alleged that, although FTC-approved testing indicated that light cigarettes yielded less nicotine and tar than regular cigarettes when smoked by a machine, defendants knew that the same was not true when light cigarettes were smoked by people, who engage in subconscious compensatory behaviors that make light cigarettes even more harmful to health than regular cigarettes.  *Id.* at 541-42.  Plaintiffs in *Altria Group* contended that defendants violated MUTPA by deliberately and fraudulently concealing this information and by affirmatively representing, by use of "light" and "low tar and nicotine" descriptors, that their cigarettes were less harmful to health.  *Id*.  The District Court entered summary judgment in favor of defendants on the ground that plaintiffs' MUTPA claim was preempted by the Labeling Act.  *Id.* at 542.  The Court of Appeals for the First Circuit, characterizing plaintiffs' claim as a fraud claim, reversed that judgment and found that it was not expressly preempted by the Labeling Act.  Thereafter, the United States Supreme Court granted certiorari to determine whether the Labeling Act expressly or impliedly preempted plaintiffs' fraud claim.  *Id.*

The Supreme Court found that plaintiffs' claim – "that the deceptive statements 'light' and 'lowered tar and nicotine' induced them to purchase [defendants'] product" – was unlike the fraudulent misrepresentation claim based on a theory of warning neutralization, which was

---

[3]  MUTPA provides in relevant part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  Me. Rev. Stat. Ann. tit. 5, § 207 (2008).

preempted in *Cipollone*. *Id.* at 546. Rather, plaintiffs "allege[d] a breach of the duty not to deceive." *Id.* While the presence of federally-mandated warnings may have been relevant to the materiality of the purportedly false statements, they did not transform the "case from one about the statements into one about the warnings." *Id.* Because Section 5(b) preempts only "*requirements and prohibitions – i.e.*, rules – that are based on smoking and health," and not "general rule[s] that create[] a duty not to deceive," plaintiffs' claim was not expressly preempted by Section 5(b). *Id.* at 547 (emphasis in original).

In addition, the Court held that plaintiffs' claim was not impliedly preempted because, contrary to defendants' contentions, it did not impede any policy of the FTC. The FTC does not have a "policy [of] authorizing collateral representations based on Cambridge Filter Method test results." *Id.* at 550. Rather, the FTC has attempted to inform consumers of the comparative tar and nicotine content of different cigarette brands and, in some cases, prevented misleading statements regarding Cambridge Filter Method test results. *Id.* Moreover, the fact that the FTC did not act on defendants' allegedly misleading use of "light" descriptors does not prove otherwise, because an agency's non-enforcement of a statute is not the equivalent of the agency's policy of approval. *Id.* Having found that the MUTPA claim was not preempted either expressly or impliedly, the Court affirmed the judgment of the Court of Appeals. *Id.* at 551.

### E. Application of *Altria Group v. Good* to the Instant Action

Section 5(b) does not require that all state law fraud claims be preempted. *Id*. at 545. Rather, the Court must consider whether the legal duty upon which Plaintiff's common law fraud claim is predicated constitutes a "requirement or prohibition based on smoking and health . . . with respect to . . . advertising or promotion, giving that clause a fair but narrow reading." *Id.*

(internal quotation marks omitted).  In the instant action, Plaintiff's claim is that Philip Morris falsely stated, suggested, implied or otherwise gave the impression to consumers, in its marketing of and advertising for Marlboro Light cigarettes, that Marlboro Lights were safer to human health as compared to regular Marlboro and/or other regular filtered cigarettes, despite its knowledge that Marlboro Lights, when smoked by human beings, did not deliver lower levels of nicotine and tar and thus were not safer to human health.  (Compl. ¶¶ 182-94.)  Although brought as a New York State common law fraud claim rather than under the New York State equivalent of MUTPA,[4] Plaintiff's claim is essentially the same as plaintiffs' claim in *Altria Group* – that Defendants deliberately and "fraudulently marketed their cigarettes as being 'light' and containing '[l]owered [t]ar and [n]icotine' to convey to consumers that they deliver less tar and nicotine and are therefore less harmful than regular cigarettes." *Altria Group*, 129 S. Ct. at 541.  Accordingly, *Altria Group* constitutes an intervening change in controlling law, which permits this Court to reconsider the July 24, 2007 Order to the extent that it held that Plaintiff's fraud in marketing Marlboro Lights was preempted.  *See Filler*, 2003 U.S. Dist. LEXIS 12836, at *2; *Richman*, 988 F. Supp. at 755.

Like the claim in *Altria Group*, Plaintiff's common law fraud claim is based on a general duty not to deceive, rather than on any requirement or prohibition based on smoking and health.  As such, Plaintiff's claim is not expressly preempted by Section 5(b).  *See Altria Group*, 129 S. Ct. at 547.  Likewise, as in *Altria Group*, Plaintiff's common law fraud claim is not impliedly

---

[4] New York General Business Law Section 349(a), which is the New York State corollary to MUTPA, provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen Bus. Law § 349(a).

preempted because it does not conflict with any longstanding FTC policies regarding the measurement, disclosure and marketing of tar and nicotine yields. *See id.* at 550. Thus, in light of *Altria Group*, I find that Plaintiff's fraud in Marketing Marlboro Lights claim is neither expressly nor impliedly preempted by Section 5(b) of the Labeling Act.

### F. Merits of Plaintiff's Marlboro Lights Fraud Claim

Defendant Philip Morris concedes, at least for purposes of the instant Motion, that Judge Brieant's finding of preemption should be vacated in light of *Altria Group*, but argues that it is still entitled to summary judgment on the independent grounds that Plaintiff cannot establish two elements of her fraud claim. "The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008); *see Held v. Kaufman*, 91 N.Y.2d 425, 431 (1998) ("To state a cause of action for fraud, a plaintiff must show an intentional misrepresentation of a material fact *resulting in some injury*." (emphasis in original)). Philip Morris argues that Plaintiff has failed to present evidence sufficient to raise a genuine issue of material fact as to whether: (1) Mr. Champagne relied on any statement made by or on behalf of Philip Morris, and (2) Mr. Champagne's injuries were proximately caused by his switching to Marlboro Light cigarettes.[5]

---

[5] Defendant appears to concede, at least for purposes of this Motion, that Plaintiff has presented evidence sufficient to raise a genuine issue of fact as to whether: (1) Plaintiff intentionally misrepresented a material fact – *i.e.*, that Defendant intentionally and fraudulently represented that Marlboro Light cigarettes were safer to human health than regular cigarettes – and, (2) Mr. Champagne suffered an injury – *i.e.*, lung cancer and death. (Def.'s Mem. of Law

### 1. Reliance

Plaintiff has submitted admissible evidence sufficient to raise a material issue of fact as to whether Mr. Champagne relied on statements made by Philip Morris in deciding to switch to and continue smoking Marlboro Lights.  First, there is evidence to support Plaintiff's contention that statements made by Philip Morris gave Mr. Champagne the impression that Marlboro Lights were safer for his health.  It is simply disingenuous to argue that Mr. Champagne, who smoked approximately two to two-and-a-half packs of Marlboro Lights a day for seventeen years (Clinton Dep. 183-84, June 30, 2006), did not notice the words "lowered tar and nicotine" and "lights" (Def.'s Opp'n 10) conspicuously printed on the packaging (Block Decl. Ex. 27).  Moreover, the evidence indicates that these words not only influenced his belief that Marlboro Lights were a safer alternative to regular cigarettes, but that he relied on them in switching to and continuing to smoke Marlboro Lights.  Specifically, Plaintiff testified that Mr. Champagne told her on numerous occasions that by switching to Marlboro Lights, he was "making an attempt to do something that was better for him because he was under the impression that they were a safer cigarette because they were lower in tar and lower in nicotine.  They were light cigarettes."[6]  (Clinton Dep. 173-74.)  Mr. Champagne also told Plaintiff that smoking Marlboro

---

in Opp'n to Pl.'s Mot. to Vacate or Modify the Ct.'s July 24, 2007 Order ("Def's Opp'n") 1-2.)  Thus, I consider only the reliance and causation elements of Plaintiff's common law fraud claim.

[6] Defendant argues that this testimony is inadmissible hearsay.  Plaintiff contends that it is admissible pursuant to Federal Rule of Evidence 803(3), which excludes from the hearsay rule a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  In the Court's view, subject to further discussion prior to trial, at least the portions of the statements regarding Marlboro Light cigarettes being safer are not hearsay because they are not offered for their truth.  *See* Fed. R. Evid. 801(c).  They are not offered to prove that

Lights would make it "easier for him to quit." (*Id.* 176.)  Thus, Mr. Champagne's basis for believing that Marlboro Lights were "safer" was that "they were lower in tar, they were lower in nicotine" – the exact information displayed on the packaging.[7] (*Id.*)  The fact that Mr. Champagne did not explain to Plaintiff why he thought that lower nicotine and tar levels meant that the cigarette was safer does not change the fact that he at least arguably relied on this information in switching to Marlboro Lights.  (*See id.* 178.)  In fact, Philip Morris knew that some consumers interpreted the phrase "lowered tar and nicotine" to mean "better for your health" (Block Decl. Ex. 25 at 54), that "perceived health concerns" was one of the main reasons consumers switched to light cigarettes, and that for some consumers, "lowering tar levels [was] the next best thing to quitting" (*id.* Ex. 24 at 16, 43).  Thus, Plaintiff has raised a genuine issue of fact as to whether Mr. Champagne relied on Philip Morris's statements in switching to and continuing to smoke Marlboro Lights.  *See Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371,

---

Marlboro Lights were safer; to the contrary, Plaintiff's whole argument is that they were not safer, but that Defendant's statements misled Mr. Champagne into thinking they were.  The statements thus have evidentiary significance not because of the truth of the matters asserted therein, but from the mere fact that they were said.  The remainder of the statements – regarding Mr. Champagne's motive for switching to and sticking with Marlboro Lights – appear to be admissible under Rule 803(3).

[7] Defendant's citation to *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70 (N.D.N.Y. 2000), in which plaintiffs claimed defendant made false statements and misled the decedent through cigarette advertisements, is unavailing as there was no evidence to suggest that the decedent either saw or relied on any of the complained-of advertisements.  Specifically, there the decedent never discussed the advertisements, and the only evidence that he saw or relied on them was that he read news periodicals that included defendant's cigarette advertisements.  In this case, the complained-of statements – "lights" and "lowered tar and nicotine" – were displayed on the Marlboro Lights packages that Mr. Champagne purchased for seventeen years, and Mr. Champagne discussed with Plaintiff his understanding of these statements as well as expressed his reliance on them in switching to Marlboro Lights.  Thus, Plaintiff has supplied the evidence of reliance lacking in *Tompkins* and similar cases cited by Defendant.  (*See* Def.'s Opp'n 10-11.)

2000 U.S. Dist. LEXIS 22223, at *18-27 (N.D.N.Y. Sept. 28, 2000) (sufficient evidence of reliance presented where plaintiffs identified particular cigarette advertisements seen by decedent and plaintiffs testified regarding statements decedent made to them demonstrating decedent's reliance on those advertisements).

### 2. Causation

"[P]roof that the allegedly fraudulent [activity] was a substantial factor in causing identifiable loss to the plaintiff" is essential to a fraud claim. *Apollo H.V.A.C. Corp. v. Halpern Constr., Inc.*, 867 N.Y.S.2d 115, 117 (App. Div. 2008); *see Curiale v. Peat, Marwick, Mitchell & Co.*, 630 N.Y.S.2d 996, 1002 (App. Div. 1995) (misrepresentations need not have been exclusive cause of plaintiff's action; sufficient that they were substantial factor in inducing plaintiff to act). Plaintiff must, therefore, demonstrate a connection between the purportedly fraudulent misrepresentations and Mr. Champagne's injuries. *See Cohen v. Houseconnect Realty Corp.*, 734 N.Y.S.2d 205, 206 (App. Div. 2001) (plaintiff must present proof that he or she "was injured as a result of the defendant's representations").

Defendant argues that Plaintiff cannot prove that its purportedly fraudulent statements – "lights" and "lowered tar and nicotine" – proximately caused Mr. Champagne's lung cancer and resulting death because there is no evidence that he (1) engaged in compensatory smoking behaviors, or (2) was injured by the additional levels of tar and nicotine he received through any such compensatory behaviors (*i.e.*, the additional tar and nicotine he took in beyond the supposedly lower advertised amounts). (Def.'s Opp'n 13-19.) Plaintiff has, however, presented sufficient evidence to raise a material issue of fact as to proximate cause. First, although Plaintiff testified that the number of cigarettes the decedent smoked remained relatively

consistent, and that she could not recall whether the way in which the decedent smoked cigarettes – *i.e.*, how he inhaled smoke, or held the cigarette, or how far down the cigarette he smoked – changed over the years (Clinton Dep. 182-84, 193-94), there is evidence to show that many smokers engage in compensatory behaviors when they switch to "light" cigarettes, and that "Marlboro Lights were designed to permit the human smoker to easily compensate to obtain nearly the same amount of nicotine . . . and tar." (Decl. of William A. Farone Ph.D. ("Farone Decl.") 8.) In addition, the fact that these behaviors are "unconscious" makes it unlikely that they would be perceptible to an observer. (Block Decl. Ex. 19 at 115.)

Second, rather than receiving lower levels of tar and nicotine, which Mr. Champagne believed he was receiving and would help him to gradually quit smoking, there is evidence to suggest that he received levels comparable to those he would have received had he been smoking regular Marlboro cigarettes. Evidence submitted by Plaintiff indicates that Marlboro Lights deliver virtually the same amount of tar and nicotine as regular Marlboro cigarettes when smoked by human beings. (*Id.* ¶¶ 159-60; *id.* Ex. 23 at 14105-06.) In fact, Defendant's own study, the results of which were in agreement with other studies, concluded that due to compensatory behaviors, smokers did not receive less smoke when smoking Marlboro Lights as opposed to regular Marlboro cigarettes. (*Id.* Ex. 23 at 2-3.) A jury could conclude that Mr. Champagne was lulled into a false sense of security by the representation that he was smoking a "light," safer cigarette, and/or that he would have chosen a brand that in fact delivered less tar and nicotine had he known the truth about Marlboro Lights.

Finally, Mr. Champagne, in the belief that Marlboro Lights were better for his health, continued to smoke them for seventeen years. Testing conducted by Philip Morris indicated that

the tar in Marlboro Lights was more carcinogenic than the tar in regular cigarettes. (*Id.* Ex. 19 at 57-58.) Thus, there is also evidence to show that by switching to and continuing to smoke Marlboro Lights, Mr. Champagne was not only impeded in his efforts to quit smoking, but exposed to more carcinogenic tar than he would have been had he continued to smoked regular Marlboro cigarettes. In his expert report, Dr. Gary M. Strauss concludes that the carcinogens in the cigarette smoke of each brand of cigarettes smoked by Mr. Champagne, including Marlboro Lights, was "a substantial contributing factor to the development of his lung cancer." (Decl. of Gary M. Strauss 23.) Accordingly, there is sufficient evidence to raise a jury question as to the causal connection between Defendant's purportedly fraudulent statements and Mr. Champagne's injuries.

## III. Conclusion

Plaintiff's Motion to Vacate or Modify the July 24, 2007 Order Granting Summary Judgment to Defendants on Plaintiff's Marlboro Lights Fraud Claim is **GRANTED**. The July 24, 2007 Order is modified in that Defendant Philip Morris's Motion for Summary Judgment is **DENIED** with respect to Plaintiff's claim of fraud in marketing Marlboro Lights.

The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 84.) The Parties are directed to appear before the Court for a status conference on September 29, 2009 at 10:30 a.m.

SO ORDERED.

Dated: September 4, 2009
      White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.