UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EILEEN A. CLINTON, on behalf of herself and as    :
administratrix of the estate of WILLIAM A.          
CHAMPAGNE, JR.,                           :
                                    :
                Plaintiff,      :
                                    :
    -against-                    :
                                    :
BROWN & WILLIAMSON HOLDINGS, INC., as   :
successor by merger to AMERICAN TOBACCO     :
COMPANY, and PHILIP MORRIS USA INC.,      :
                                    :
             Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**05 Civ. 9907 (CS) (LMS)
ECF Case**

**DEFENDANTS' PRELIMINARY
PROPOSED JURY INSTRUCTIONS***

---

*      These preliminary proposed jury instructions are filed subject to the various objections and reservations discussed in the cover pleading accompanying this filing. By filing these jury instructions, Defendants do not waive or abandon any argument previously asserted in this matter. Defendants also expressly reserve the right to modify or supplement these preliminary proposed jury instructions prior to the submission of the case to the jury.

**Defendants' Proposed Instruction Number 1.**

**General Introductory Instructions**

Members of the Jury, we have almost reached that point where you will begin your final function as jurors, which, as I hope you all appreciate, is one of the most important duties of citizenship in this country.

My instructions will be in four parts. First, I will start with some general introductory instructions about the role of the Court and the Jury, and the burden of proof. Second, I will describe the law to be applied to the facts as you find them to be established by the proof. Third, I will give you instructions concerning the evaluation of evidence. The fourth and final section of these instructions will relate to your deliberations.

**AUTHORITY:**

*Grill* jury instructions, p. 1.[*]

---

[*]      Citations to "*Grill* jury instructions" are to the final jury charge drafted by the Court in *Grill v. Philip Morris USA Inc.*, No. 05-CV-9174 (CS). For the Court's convenience, we have attached a copy of the final jury instructions as Exhibit C to this filing. Page references in this document refer to the pagination in the attachment.

**Defendants' Proposed Instruction Number 2.**

<u>**Role of the Court and the Jury**</u>

It is my duty to instruct you as to the law, and it is your duty to accept these instructions of law and apply them to the facts as you determine them.  If an attorney stated a legal principle different from any that I state to you in my instructions, it is my instructions you must follow. You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate.  You should not be concerned about the wisdom of any rule that I state.  Regardless of any opinion you may have about what the law may be or ought to be, it would be a violation of your oath to base your verdict on any view of the law other than that which I give you.

You, the members of the Jury, are the sole and exclusive judges of the facts.  You pass on the evidence, determine the credibility of witnesses, resolve such conflicts as there may be in the testimony, draw whatever reasonable inferences you decide to draw from the facts as you determine them, and determine the weight of the evidence.  In doing so, remember that you took an oath to render judgment impartially and fairly, without prejudice or sympathy or fear, based solely on the evidence and the applicable law.

<u>**AUTHORITY:**</u>

*Grill* jury instructions, pp. 1-2.

**Defendants' Proposed Instruction Number 3.**

<u>**Plaintiff's Claims:  Generally**</u>

Plaintiff Eileen Clinton brought this action against The American Tobacco Company and Philip Morris USA for compensation for the personal injuries of her husband, William Champagne, as well as for the economic losses she and Mr. Champagne's children suffered as a result of Mr. Champagne's death.

The plaintiff has made three claims in this action.  Two claims are asserted against The American Tobacco Company, and one claim is asserted against Philip Morris USA.

Plaintiff asserts two different claims against American Tobacco, both of which are limited to the time period prior to September 11, 1968, which was Mr. Champagne's 18th birthday.  First, Plaintiff claims that during this time period, American Tobacco negligently failed to warn William Champagne about the health hazards and/or addictiveness of smoking its cigarettes, causing William Champagne to develop lung cancer and ultimately to die.  Second, Plaintiff claims that during the same time period, American Tobacco fraudulently concealed material information about the health hazards and/or addictiveness of smoking its cigarettes, causing William Champagne to develop lung cancer and ultimately to die.

Plaintiff's claim against Philip Morris USA is for fraudulent misrepresentation in the marketing of Marlboro Lights cigarettes.  In connection with this claim, Plaintiff alleges that Philip Morris USA fraudulently misrepresented to William Champagne that Marlboro Lights cigarettes were safer to human health than full-flavored cigarettes and easier to quit, causing Mr. Champagne to develop lung cancer and ultimately to die.

Defendants deny these claims.  Defendants also deny that Mr. Champagne's cancer was caused by cigarette smoking.

**AUTHORITY:**

*See* Compl. ¶¶ 126-32, 143-49, 150-55 (failure to warn); *id.* at ¶¶ 100-13 (fraudulent concealment); *id.* at ¶¶ 182-94 (fraud). *See also Clinton v. Brown & Williamson Holdings, Inc.*, 498 F. Supp. 2d 639, 642 (S.D.N.Y. 2007). The language of this instruction is modeled as closely as possible on the Court's description of the Plaintiff's claims in *Grill* (*see Grill* jury instructions, p. 2). The original has been modified to change the names of the parties, to eliminate the "outside of advertising and promotion" restriction, to eliminate some repetition, and to add the separate claim for affirmative fraud against PM USA. Defendants have also added a short paragraph to the end of this instruction noting that they deny the allegations.

**Defendants' Proposed Instruction Number 4.**

**Date Restriction**

As I indicated at the beginning of the case, Plaintiff's claims against American Tobacco are limited to conduct by that Defendant occurring on or before September 11, 1968, William Champagne's birthday.   Accordingly, you may <u>not</u> find American Tobacco liable based on anything that American Tobacco did or did not do, or said or did not say, after September 11, 1968.

**AUTHORITY:**

*Grill* jury instructions, p. 3.  The proposed instruction is taken directly from the Court's charge; the only alteration is the substitution of "American Tobacco" for "Philip Morris," "William Champagne" for "Ann Grill," and "September 11, 1968" for "February 26, 1980."

**Defendants' Proposed Instruction Number 5.**

<u>**No Speculation About Post-1968 Conduct**</u>

You may not presume that any acts or omissions by American Tobacco prior to September 11, 1968 continued or were repeated after that date.

<u>**AUTHORITY:**</u>

*See Newland v. Lape*, No. 05 CV 2686, 2008 WL 2485404, at * 2 (S.D.N.Y. June 19, 2008) (upholding trial court's admission of otherwise inadmissible evidence in order to avoid the greater risk of "jury speculation about the officer's subsequent actions"); *Engel v. F.W. Woolworth Co.*, 213 F.2d 482, 484 (2d Cir. 1954) (upholding trial court's instruction to jury that it was not to make inferences regarding manufacturer's later actions regarding safety measures in elevator models, the jury was limited to determining whether elevator as safe at the time that it was installed); New York Pattern Jury Instructions – Civil 1:25 A ("You may not consider or speculate on matters not in evidence or matters outside the case."); *Prunier v. City of Watertown*, 936 F.2d 677, 680 (2d Cir. 1991) (jury may not base its verdict on speculation).

**Defendants' Proposed Instruction Number 6.**

<u>**Separate Claims**</u>

It is important for you to keep in mind that the claims against American Tobacco have not been asserted against Philip Morris, and the claim against Philip Morris has not been asserted against American Tobacco. That is, there is no claim in this case that at any time, Philip Morris fraudulently concealed information about the health hazards of smoking cigarettes in general or Light cigarettes in particular from William Champagne, or failed to warn Mr. Champagne of those risks. Likewise, there is no claim that American Tobacco fraudulently misrepresented to William Champagne that Light cigarettes were safer for human health than regular cigarettes.

**Defendants' Proposed Instruction Number 7.**

**Burden of Proof: Introduction**

Plaintiff Eileen Clinton has the burden to prove every element of each of her three claims. As to the first claim—negligent failure to warn—Plaintiff has the burden to prove every element by a preponderance of the evidence. As to the second and third claims—fraudulent concealment and fraudulent misrepresentation—Plaintiff has the burden to prove every element by clear and convincing evidence.

The Defendants have no obligation to produce any evidence concerning the Plaintiff's claims.

**AUTHORITY:**

*Grill* jury instructions, p. 4. (The first paragraph of the proposed instruction is taken directly from the *Grill* charge, except that the name "John Grill" has been replaced with "Eileen Clinton." The second paragraph has been added for the sake of clarity.)

*See also Weigl v. Quincy Specialties Co.*, 1 A.D.3d 132, 133 (1st Dep't 2003) (preponderance standard applies to negligent failure to warn claims); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784-85 (2d Cir. 2003) ("Under New York law, each element of a fraud claim must be proven by clear and convincing evidence.").

**Defendants' Proposed Instruction Number 8.**

**Preponderance of the Evidence—Negligent Failure to Warn Claim**

One of the claims that Plaintiff Eileen Clinton has asserted against American Tobacco is for negligent failure to warn. She ~~Plaintiff Eileen Clinton~~ has the burden to prove every essential element of ~~her negligent failure to warn~~ this claim by a preponderance of the evidence. If Plaintiff should fail to establish by a preponderance of the evidence any essential element of her claim, you should find for Defendant American Tobacco as to this claim.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant credible testimony of all witnesses, regardless of who may have called them, and all the relevant credible exhibits received in evidence, regardless of who may have introduced them. The "credible" evidence means the testimony or exhibits that you find to be worthy to be believed.

If, after considering all of the evidence, you are satisfied that Plaintiff has carried her burden on each essential element of the failure to warn claim, then you must find in Plaintiff's favor on that claim. If, after such consideration, you find that the evidence produced by Plaintiff is outweighed by evidence against her claim, or that the credible evidence on a given issue is evenly divided between Plaintiff and the Defendant, then you must decide that issue against Plaintiff. That is because Plaintiff must prove more than simple equality of evidence—she must prove each element of the claim by a preponderance of the evidence. On the other hand, Plaintiff need not prove more than a preponderance. So, as long as you find that the scales tip, however,

slightly, in favor of Plaintiff—that what she claims is more likely true than not—then that element will have been proven by a preponderance of evidence.

**AUTHORITY:**

*Grill* jury instructions, pp. 4-5.  The instruction is taken directly from the *Grill* charge, except that the names of the plaintiff and defendant, and the pronouns, have been changed appropriately.  Slight alterations to the opening sentences, made for the sake of clarity, are shown in underline and ~~strikethrough~~.

**Defendants' Proposed Instruction Number 9.**

**Clear and Convincing Evidence—Fraud Claims**

Plaintiff Eileen Clinton has advanced two fraud claims in this case: a claim for fraudulent concealment against American Tobacco, and a claim for fraudulent misrepresentation against Philip Morris. Plaintiff has the burden to prove every essential element of ~~his fraudulent concealment claim~~ each of these claims by clear and convincing evidence.

What does "clear and convincing evidence" mean? "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard described above. Neither standard requires proof to an absolute certainty.

To decide for the Plaintiff on ~~his fraudulent concealment claim~~ either of her fraud-based claims, it is not enough to find that the preponderance of the evidence is in the Plaintiff's favor. As I just explained in conjunction with Plaintiff's first claim—the failure to warn claim—a party who must prove ~~his case~~ her claim by a preponderance of the evidence only need satisfy you that the evidence is more likely true than not. ~~evidence supporting his case more nearly represents what actually happened than the evidence which is opposed to it.~~ But a party who must establish ~~his~~ her case by clear and convincing evidence, as Plaintiff must do for ~~his fraudulent concealment claim~~ her fraud-based claims, must satisfy you that the evidence makes it highly probable that what she claims is what actually happened.

If, upon considering all of the evidence, you are satisfied that there is a high probability that there was fraud or fraudulent concealment—as I will define for you shortly—you must decide for the Plaintiff on ~~the fraudulent concealment~~ the appropriate claim or claims. If you are not satisfied that there is such a high probability on one or both of the fraud-based claims, you

must decide for the Defendant <u>or Defendants</u> on the ~~fraudulent concealment~~ <u>appropriate</u> claim <u>or</u>

<u>claims</u>.

**AUTHORITY:**

*Grill* jury instructions, pp. 5-6.   Alterations, other than changes to the names of the

plaintiff and defendants, are shown in <u>underline</u> and ~~strikethrough~~.   All but one of the alterations

are non-substantive and intended simply to reflect the different claims being asserted in the

*Clinton* case.   The one substantive alteration is to the description of the preponderance standard

in the third paragraph:   The wording of the *Grill* instruction ("evidence supporting his case more

nearly represents what actually happened than the evidence which is opposed to it") could

improperly suggest to the jury that the defendants have an obligation to produce evidence

"opposing" the plaintiff's evidence.   Defendants respectfully request that the Court replace this

phrase with the more accurate and less potentially confusing "more likely true than not."

**Defendants' Proposed Instruction Number 10.**

**Medical Causation**

~~Both~~ All three of Plaintiff's claims require Plaintiff to prove, by a preponderance of the evidence, that William Champagne's cancer ~~originated in the lung~~ was caused by smoking cigarettes.  If you find that Plaintiff proved, by a preponderance of the evidence, that William Champagne's cancer ~~originated in the lung~~ was caused by smoking cigarettes, you will proceed to assess the elements of each claim.  If you find that Plaintiff has failed to prove, by a preponderance of the evidence, that William Champagne's cancer ~~originated in the lung~~ was caused by smoking cigarettes, you will *not* proceed to assess the elements of the claims.


**AUTHORITY:**

*Grill* jury instructions, p. 7.  Alterations, other than the change in the name of the plaintiff, are shown in underline and ~~strikethrough~~.  (In the original *Grill* charge, the word "not" in the final sentence was underlined for emphasis.  We have replaced the underlining with *italics* to avoid confusion.)  *See also Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 90-91 (2d Cir. 1980) (applying New York law: "A plaintiff who seeks recovery for an injurious side effect from a properly manufactured prescription must prove that the drug caused her injury . . . ."); *Clarke v. Helene Curtis, Inc.*, 742 N.Y.S.2d 325, 326 (2d Dep't 2002) ("The plaintiff must demonstrate, at a minimum, that her injuries are the direct result of the [product] applied . . . and that [the product is] the sole possible cause of those injuries.") (internal quotations and citations omitted) (alterations in original); *Samuels v. Am. Cyanamid Co.*, 495 N.Y.S.2d 1006, 1014-15 (N.Y. Sup. Ct. 1985) ("It is essential that a plaintiff must establish that the injury sued upon resulted from the use of defendant's product.").

**Defendants' Proposed Instruction Number 11.**

<u>**Negligent Failure to Warn:  Elements**</u>

<u>Plaintiff claims that before September 11, 1968, American Tobacco negligently failed to warn William Champagne of the health hazards of smoking its cigarettes, and that William Champagne was injured as a result of that failure to warn.  This claim is asserted against American Tobacco only, and not against Philip Morris.  American Tobacco denies these allegations.</u>

In order to prove the essential elements of the negligent failure to warn claim, the burden is on Plaintiff to establish by a preponderance of the evidence the following *four* elements:

*First*, that Defendant American Tobacco had a duty to warn William Champagne about the health hazards of smoking its cigarettes ~~by some means of communication other than through advertising or promotion of cigarettes~~;

*Second*, that Defendant American Tobacco breached that duty;

*Third*, that Defendant American Tobacco's breach of its duty to warn was a proximate cause of William Champagne's injuries; and

*Fourth*, that William Champagne suffered loss or damage.

I will now discuss each of these four elements in greater detail.


**<u>AUTHORITY:</u>**

*Grill* jury instructions, pp. 7-8.  Alterations, other than changing the names of the plaintiff and defendant, are shown with <u>underline</u> and ~~strikethrough~~.  (In the original *Grill* instructions, the word "four" in the second paragraph, and the ordinal numbers before each element, were underlined for emphasis.  We have used *italics* here, to avoid confusion.)  *See also Grill v. Philip*

*Morris USA*, 653 F. Supp. 2d 481, 497 (S.D.N.Y. 2009) (citing *Rogers v. Westfalia Associated Techs.*, 485 F.Supp. 2d 121, 129 (N.D.N.Y.2007)).

**Defendants' Proposed Instruction Number 12.**

**<u>Negligent Failure to Warn:  Duty</u>**

The first element of a negligent failure to warn claim requires Plaintiff to prove by a preponderance of the evidence that Defendant American Tobacco had a duty to warn William Champagne ~~by some means of communication other than advertising or promotion of cigarettes,~~ about the health hazards and addictiveness of smoking its cigarettes.   Any such duty must have arisen prior to September 11, 1968, William Champagne's 18th birthday.

A manufacturer of a product has a duty to warn users about latent, or hidden, dangers resulting from foreseeable uses of the product.

**<u>AUTHORITY:</u>**

The first paragraph is taken from the *Grill* jury instructions, p. 8.  Alterations, other than to the names of the plaintiff and defendant and the applicable cut-off date, are shown in ~~strikethrough~~.

The second paragraph is drawn from *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998) ("A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known.") (citing *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992)).

**Defendants' Proposed Instruction Number 13.**

**Negligent Failure to Warn:   No Duty To Warn Of Obvious Risks**

A manufacturer has no duty to warn of a risk posed by a product that is clearly dangerous or poses an open and obvious risk.  A risk is clear or open and obvious if a reasonable person would recognize that a danger exists through general knowledge, observation, or common sense.

Therefore, if you find that during the relevant time period, the health risks of smoking were open and obvious, you may not find that American Tobacco owed William Champagne a duty to warn of those risks.

**AUTHORITY:**

Adapted from PJI 2:120.  The comments to that instruction (*see* 1A NY PJI 3d 2:120, at 760 (2012)) recognize that no duty to warn arises under New York law as to the class of hazards that pose open and obvious risks.  *See also Burke v. Spartanics, Ltd.*, 252 F.3d 131, 137 (2d Cir. 2001) (restating law as: "a reasonable person would not warn of obvious dangers, *i.e.* those dangers that most all people know about.  As a result, as to these risks, it cannot be negligent to fail to warn"); *Rogers v. Westfalia Assoc. Tech., Inc.*, 485 F. Supp. 2d 121, 129 (N.D.N.Y. 2007); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 89 (N.D.N.Y. 2000); *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 241-42 (1998); *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 9 (1st Dep't 1998); *Lancaster Silo & Block Co. v. N. Propane Gas Co.*, 75 A.D.2d 55, 64 (4th Dep't 1980); *Secone v. Raymond Corp.*, 240 A.D.2d 391, 392 (2d Dep't 1997); *Smith v. Stark*, 67 N.Y.2d 693 (1986).

**Defendants' Proposed Instruction Number 14.**

**Negligent Failure to Warn:  Breach**

If you find that Plaintiff has proven that during the relevant time period, Defendant American Tobacco owed William Champagne a duty to warn him of the health risks and addictiveness of smoking its cigarettes, you must next consider whether American Tobacco breached that duty.  Plaintiff bears the burden of proving this element by a preponderance of the evidence.

A manufacturer of a product breaches a duty to warn when it fails to exercise reasonable care to give adequate warning of any dangers known to it or which in the use of reasonable care it should have known and which the user of the product ordinarily would not discover. ~~inform the user of the facts which make the product dangerous.~~  Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances to avoid injury to themselves or their property, or the person or property of others.  The amount of care or caution that is reasonable depends on the circumstances, including the nature and foreseeability of the risk.

**AUTHORITY:**

*Grill* jury instructions, p. 9.  This proposed instruction is taken from the *Grill* instructions; alterations (except for changes to the names of the plaintiff and defendant) are noted in underline and ~~strikethrough~~.  The changes are based on the failure-to-warn instruction in the PJI.  *See* 1A NY PJI 3d 2:120 (2012); *Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640 (E.D.N.Y. 1997).

**Defendants' Proposed Instruction Number 15.**

**Negligent Failure to Warn:  Knowledge**

In order to prove that American Tobacco breached a duty to warn Mr. Champagne about the health risks of smoking its cigarettes, Plaintiff must prove, by a preponderance of the evidence, that American Tobacco failed to warn Mr. Champagne of a reasonably foreseeable risk about which American Tobacco knew or should have known between the time when Mr. Champagne began smoking and September 11, 1968, and which was not ordinarily discoverable.

**AUTHORITY:**

Adapted from PJI 2:120.  See also comments to PJI 2:120 at 709; *In re New York Asbestos Litig.*, 149 F.R.D. 490, 497 (S.D.N.Y. 1993), *cert. granted, judgment vacated on other grounds, by Consorti v. Owens-Corning Fiberglas Corp.*, 116 S. Ct. 2576 (1996) ("Such a determination is necessarily relative to the scientific knowledge generally known or available to the manufacturer at the time the product in question was sold or otherwise placed in the stream of commerce.") (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 344 (5th Cir. 1982)); *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 238-42 (1998); *Cover v. Cohen*, 61 N.Y.2d 261, 270 (1984); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 64 (4th Dep't 1980); *Secone v. Raymond Corp.*, 240 A.D.2d 391, 392 (2d Dep't 1997); *Baptiste v. Northfield Foundry & Mach. Co.*, 184 A.D.2d 841, 842 (3d Dep't 1992).

**Defendants' Proposed Instruction Number 16.**

## Negligent Failure to Warn:  Knowledge (State of the Art)

In determining whether a risk was known or should have been known, American Tobacco's knowledge of the risks of smoking must be judged by the state of medical and scientific knowledge as it existed at the time it manufactured and sold the cigarettes to Mr. Champagne between the time he started to smoke and September 11, 1968.  For this claim, you must consider the state of scientific and medical knowledge in that time period only.  You may not consider the state of scientific or medical knowledge at any time after September 11, 1968.

## AUTHORITY:

*In re New York Asbestos Litig.*, 149 F.R.D. 490, 497 (S.D.N.Y. 1993), *cert. granted, judgment vacated on other grounds, by Consorti v. Owens-Corning Fiberglas Corp.*, 116 S. Ct. 2576 (1996)  ("Such a determination is necessarily relative to the scientific knowledge generally known or available to the manufacturer at the time the product in question was sold or otherwise placed in the stream of commerce.") (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 344 (5th Cir. 1982)); *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 238-42 (1998); *Cover v. Cohen*, 61 N.Y.2d 261, 270 (1984); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 64 (4th Dep't 1980); *Secone v. Raymond Corp.*, 240 A.D.2d 391, 392 (2d Dep't 1997); *Baptiste v. Northfield Foundry & Mach. Co.*, 184 A.D.2d 841, 842 (3d Dep't 1992).

**Defendants' Proposed Instruction Number 17.**

**Negligent Failure to Warn:  Causation (Introduction)**

If you find that Plaintiff proved, by a preponderance of the evidence, that ~~during the relevant time period~~ <u>prior to September 11, 1968</u>, Defendant American Tobacco had, and breached, a duty to warn William Champagne about the health hazards and addictiveness of smoking its cigarettes ~~through some means of communication other than through advertising or promotion~~, then you must ~~then~~ decide whether Plaintiff proved by a preponderance of the evidence that American Tobacco's failure to warn was a proximate cause of William Champagne's injuries.

**AUTHORITY:**

*Grill* jury instructions, p. 10.  Alterations, other than to the names of the parties, are shown with <u>underline</u> and ~~strikethrough~~.

**Defendants' Proposed Instruction Number 18.**

**<u>Negligent Failure to Warn:  Causation (Substantial Factor)</u>**

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury—that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.  This means the injured party would not have sustained the injuries absent the Defendant's conduct, and that there be some direct relation between the injury asserted and the injurious conduct alleged.  Plaintiff must prove, by a preponderance of the evidence, that Defendant American Tobacco's failure to warn William Champagne of the health hazards and addictiveness of smoking was a substantial factor in causing William Champagne's injury, and that William Champagne's injury was a reasonably foreseeable result of Defendant's conduct.


**<u>AUTHORITY:</u>**

*Grill* jury instructions, p. 10.  The proposed instruction is taken directly from the court's charge in *Grill*, except that the names of the plaintiff and defendant have been changed.  *See also* NY PJI 2:70; *Caronia v. Philip Morris United States, Inc.*, No. 06-CV-224, 2011 U.S. Dist. LEXIS 12610 (E.D.N.Y. Jan. 12, 2011) (holding, in tobacco case seeking medical monitoring damages, that New York law requires a plaintiff "to plead and prove that [he] would not require monitoring *** absent Philip Morris's wrongful conduct"; "New York tort law *** uses 'substantial factor' to refer to the subset of but for causes that will be said to be the proximate or legal cause of an actionable harm.") (citing *Lee v. New York City Hous. Auth.*, 25 A.D.3d 214 (1st Dep't 2005); *Smith v. City of New York*, 282 A.D. 495 (1st Dep't 1953)).

**Defendants' Proposed Instruction Number 19.**

**<u>Negligent Failure to Warn:  Causation (Other Causes)</u>**

There may be more than one cause of an injury.  Many factors or things, or the conduct of two or more persons or entities, may operate at the same time, either independently or together, to cause injury, and in such a case, each may be a proximate cause.  So there may be more than one proximate cause, but to be substantial, it cannot be slight or trivial.  You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Plaintiff has the burden of establishing, by a preponderance of the evidence, that Defendant American Tobacco's conduct was a proximate cause of William Champagne's injuries.  In response, American Tobacco is permitted to argue, and to introduce evidence it believes supports the argument, that it was not the proximate cause of William Champagne's injuries, and it may do so by offering evidence of other causes of those injuries.  Such evidence may include evidence that William Champagne caused his own injuries or that they were caused by another factor.  Evidence of other possible causes of William Champagne's injuries is relevant only if those causes, taken together, were so substantial as to render the Defendant's conduct, if you find it to be causative at all, not substantial.

If you find by a preponderance of the evidence that Defendant American Tobacco's conduct was not a substantial cause of William Champagne's injuries, this element is not met.  But if you find that Defendant American Tobacco's conduct was a substantial factor in causing William Champagne's injuries, this element is met, and the fact that there may have been other causes is irrelevant and will not reduce or eliminate Defendant American Tobacco's liability.

**AUTHORITY:**

*Grill* jury instructions, pp. 10-11.  The proposed instruction is taken directly from the court's charge in *Grill*, except that the names of the plaintiff and defendant have been changed. *See also* NY PJI 2:71.

**Defendants' Proposed Instruction Number 20.**

**<u>Negligent Failure to Warn:  Specific Causation</u>**

In order to prove that American Tobacco's failure to warn Mr. Champagne about the hazards of smoking its cigarettes was a cause of his injury, Plaintiff must prove, by a preponderance of the evidence, that the Lucky Strike cigarettes smoked by Mr. Champagne before September 11, 1968 were a substantial factor in bringing about his injuries.

**<u>AUTHORITY:</u>**

In order to prove causation as a result of using American Tobacco's products, Plaintiff must prove that Mr. Champagne was exposed to a "toxic dose" of cigarette smoke prior to September 11, 1968.  *Parker v. Mobil Oil Corp.*, 7 N.Y.3d 434, 448 (2006), *reargument denied*, 8 N.Y.3d 828, 828 (2007); *Briscoe-Reed v. Silicon Valley Grp.*, 6 A.D.3d 564, 565 (2d Dep't 2004).

**Defendants' Proposed Instruction Number 21.**

**<u>Negligent Failure to Warn:  Awareness / No Proximate Cause</u>**

Where an injured party was already aware of a hazard through general knowledge, observation, or common sense, a manufacturer cannot be held liable for failing to warn of that known hazard because the failure to warn cannot have been a substantial factor in causing the injury.  Whether a person should have been aware must be determined according to the age, experience, and development of the person.

**<u>AUTHORITY:</u>**

*Burke v. Sparanics*, 252 F.3d 131 (2d Cir. 2001); *Steuhl v. Home Therapy Equip., Inc.*, 51 A.D.3d 1101, 1103 (3d Dep't 2008); *Rogers v. Westfalia Assoc. Tech., Inc.*, 485 F. Supp. 2d 121, 128-29 (N.D.N.Y. 2007).  The final sentence is taken from the *Grill* instructions.

**Defendants' Proposed Instruction Number 22.**

**Negligent Failure to Warn: Loss or Damage**

As the fourth element of her negligent failure to warn claim, Plaintiff must prove by a preponderance of the evidence that William Champagne suffered loss or damage as a result of Defendant American Tobacco's failure to warn him of the health hazards and addictiveness of smoking its cigarettes.

**AUTHORITY:**

*Grill* instructions, p. 11.   The proposed charge is taken directly from the *Grill* instructions, except that the names of the parties have been changed and the "channels of advertising and promotion" restriction has been removed.

**Defendants' Proposed Instruction Number 23.**

**Fraudulent Concealment:  Elements**

Plaintiff's claim for fraudulent concealment is asserted against American Tobacco and not Philip Morris.  Plaintiff alleges that prior to September 11, 1968, American Tobacco intentionally concealed material information about its cigarettes that it had a duty to disclose, and that William Champagne relied on this concealment to his detriment.  American Tobacco denies these allegations.

In order to prove the essential elements of Plaintiff's fraudulent concealment claim against American Tobacco, the burden is on Plaintiff to establish by clear and convincing evidence the following ~~four~~ five elements:

First, that prior to September 11, 1968, Defendant American Tobacco failed to disclose material information ~~that it   had a duty to disclose~~ concerning its cigarettes to William Champagne ~~through some means of communication other than advertising or promotion~~;

Second, that American Tobacco had a duty to disclose the material information;

~~Second~~ Third, that American Tobacco intended to defraud consumers when it failed to disclose the material information;

~~Third~~ Fourth, that William Champagne  actually and reasonably relied upon the failure to disclose material information; and

~~Fourth~~ Fifth, that William Champagne suffered damage as a result of such reliance.


**AUTHORITY:**

*Grill* jury instructions, p. 12.  Alterations, other than to the names of the plaintiff and defendant, are noted in underline and ~~strikethrough~~.  The one substantive change we have made to the court's prior instruction is to split the first element into two separate elements.  The

existence of a duty to disclose material information, and the failure to disclose that information, are two separate evidentiary requirements for the plaintiff to prove; we believe the charge will be more useful to the jury, and more accurately summarize the law, if the elements are separated. *See*, *e.g.*, *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.  To establish fraudulent concealment, a plaintiff must ***also*** prove that the defendant had a duty to disclose the material information.") (citations omitted and emphasis added); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) ("In New York a plaintiff alleging fraud must show by clear and convincing evidence that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result.  Where a defendant, as here, seeks to show fraud by omission, it must prove ***additionally*** that the plaintiff had a duty to disclose the concealed fact.") (citations omitted and emphasis added).

**Defendants' Proposed Instruction Number 24.**

**Fraudulent Concealment:  Concealment**

The first question for you to determine is what, if anything, American Tobacco concealed.  If you find that American Tobacco did not conceal any information, your verdict will be for American Tobacco on this claim.


**AUTHORITY:**

Adapted from NYPJI 3:20.   *See Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193, 201 (W.D.N.Y. 1998), *aff'd*, 5 Fed. Appx. 52 (2d Cir. Mar. 12, 2001).

**Defendants' Proposed Instruction Number 25.**

**Fraudulent Concealment:  Fact or Opinion**

If you find that information was concealed, you must next consider whether the information concealed was fact or opinion.  If it was an opinion rather than a statement of fact, then American Tobacco cannot be held responsible, because opinions are a matter of judgment for which, under the circumstances of this case, the law does not impose liability.  If you find that the concealed information amounted to no more than expressions of opinions as to smoking and health, your verdict will be for American Tobacco on this claim.


**AUTHORITY:**

Adapted from NYPJI 3:20.   *See Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193, 201 (W.D.N.Y. 1998), *aff'd*, 5 Fed. Appx. 52 (2d Cir. Mar. 12, 2001).

**Defendants' Proposed Instruction Number 26.**

**Fraudulent Concealment:  Duty to Disclose**

Plaintiff must <u>next</u> prove, by clear and convincing evidence, that Defendant American Tobacco had a duty to disclose particular facts to William Champagne ~~by means of communication other than advertising or promotion~~.  ~~Plaintiff may do so in one of two ways.~~ ~~First, it may~~ <u>To do so, Plaintiff must</u> prove, by clear and convincing evidence, that <u>prior to September 11, 1968,</u> Defendant American Tobacco had superior knowledge of those facts, such that any purchase of cigarettes made by William Champagne without disclosure was inherently unfair.  Superior knowledge means that there was information peculiarly within the knowledge of Defendant American Tobacco and that William Champagne could not have discovered <u>the information</u> through the exercise of ordinary diligence.  Ordinary diligence must be determined according to the age, experience, and development of the person.


**AUTHORITY:**

*Grill* jury instructions, pp. 13-14.  Alterations are shown in <u>underline</u> and ~~strikethrough~~. *See also Miele v. Am. Tobacco Co.*, 2 A.D.3d 799, 803 (2d Dep't 2003) (citing *Stevenson Equip. v Chemig Constr. Corp.*, 170 A.D.2d 769 (3d Dep't 1991); *Young v Keith*, 112 A.D.2d 625 (3d Dep't 1985); 60A N.Y. JUR 2D, *Fraud and Deceit* § 98); *Black v. Chittenden*, 69 N.Y.2d 665, 669 (1986) (citing *Schumaker v Mather*, 133 N.Y. 590, 596 (1892) ("[T]he general rule is that if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations."); *Jana L. v West 129th Street Realty Corp.*, 22 A.D.3d 274 (1st Dep't 2005).

**Defendants' Proposed Instruction Number 27.**

**<u>Fraudulent Concealment:  No Duty Without Privity</u>**

American Tobacco had no duty to disclose particular facts to William Champagne, even if it had superior knowledge of those facts, unless it engaged in a business transaction with William Champagne.  If you find that William Champagne did not engage in any business transactions with American Tobacco, then you may not find that American Tobacco had a duty to disclose material facts to her.

Simply purchasing cigarettes from a retail outlet (such as a convenience store or grocery store) is not sufficient to establish such a business transaction.


**<u>AUTHORITY:</u>**

*Abbatiello v. Monsanto Co*., 522 F. Supp. 2d 524, 534 (S.D.N.Y 2007) (dismissing a claim against Monsanto for fraudulent concealment of health information brought by workers at General Electric who were exposed to PCB-containing products made by Monsanto, noting that "the Employees fail to allege that Monsanto had a duty to disclose this information to them.  Nor is the Court aware of any such duty"; Monsanto argued in its brief that a duty to disclose based on superior knowledge arises only in the context of a transaction); *The Gereffert Co. v. Yipon Corp*., 1989 WL 121057, No. 88-civ-1878 (E.D.N.Y. Sept. 26, 1989) (stating in a non-personal injury case that "silence is actionable fraud only where there exists between the parties a fiduciary or other relationship of trust or confidence . . . or privity of contract"); *Edward B. Fitzpatrick Jr. Constr. Corp. v. Cty. of Suffolk*, 525 N.Y.S.2d 863 (2d Dep't 1988) (affirming dismissal of concealment claim in non-personal-injury case noting that "[i]n the absence of privity of contract, Bowe Walsh and Converse Ward were not under a duty to disclose to the

plaintiff that certain subsurface conditions were materially different from those state in the contract specifications").

**Defendants' Proposed Instruction Number 28.**

**Fraudulent Concealment:  Materiality**

If you find that American Tobacco had a duty to disclose material facts to William Champagne about the risks of smoking, and concealed those facts, you must determine whether the undisclosed facts were material.

A fact is material if a reasonable person would have considered it important in deciding whether to purchase and smoke cigarettes made by American Tobacco.

**AUTHORITY:**

*Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000) (a misrepresentation is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question"); NY PJI 3:20, comment I.D.2, at 202 (2012) ("Generally, what is material is determined by whether a reasonable person would consider it of importance."); RESTATEMENT (SECOND) OF TORTS § 538 (1977) ("The matter is material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.").

We note that in *Grill*, the Court defined materiality generally ("A fact is material if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action or inaction in the conduct in question.").  We respectfully submit that the language above ("…important in deciding whether to purchase and smoke cigarettes made by American Tobacco.") is tailored to the facts of this case and more helpful to the jury.

**Defendants' Proposed Instruction Number 29.**

**Fraudulent Concealment:  Intent**

In order to establish that American Tobacco intended to defraud William Champagne by concealing material information, Plaintiff must prove by clear and convincing evidence that American Tobacco intentionally concealed ~~the~~ material information <u>that it knew to be material</u> for the purpose of inducing consumers to rely upon the concealment.  Conduct is intentional if it is purposeful—that is, the product of the Defendant's conscious objective rather than the product of mistake, accident, ~~or~~ negligence<u>, or recklessness</u>.


**AUTHORITY:**

*Grill* jury instructions, p. 14.  Alterations are noted in <u>underline</u> and ~~strikethrough~~.  *See also Ozelkan v Tyree Bros. Envtl. Servs., Inc.*, 29 A.D.3d 877, 878 (2d Dep't 2006); *Jablonski v. Rapalje*, 14 A.D.3d 484, 487 (2d Dep't 2005).

**Defendants' Proposed Instruction Number 30.**

**Fraudulent Concealment:  Reliance**

If you find that American Tobacco intentionally breached a duty to disclose a material fact, you must next determine whether William Champagne actually relied on American Tobacco's concealment when deciding whether to smoke cigarettes, and whether such reliance was reasonable.

**AUTHORITY:**

*Grill* jury instructions, p. 14.  *See also Banque Arabe Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 156 (2d Cir. 1995) (citing *Harris v. Camilleri*, 77 A.D.2d 861 (2d Dep't 1980)).

**Defendants' Proposed Instruction Number 31.**

**Fraudulent Concealment:  Actual Reliance**

To establish that William Champagne actually relied on a concealment of material information by Defendant American Tobacco, the Plaintiff must prove, by clear and convincing evidence, that William Champagne was induced to act, or refrain from acting, by American Tobacco's silence.

**AUTHORITY:**

*Grill*, 653 F. Supp. 2d at 496 (Plaintiff must prove that Mrs. Grill "relied on Defendants' silence regarding the hazards and addictiveness of smoking in making her decision to smoke"); *Shea v. Hambros PLC*, 244 A.D.2d 39 (1st Dep't 1998) ("To show reliance, [a plaintiff] must demonstrate that he was induced to act or refrain from acting to his detriment by virtue of the alleged . . . omission."); *In re Kings County Tobacco Litig.*, 187 Misc.2d 404 (N.Y. Sup. Ct. 2000) ("[F]raudulent concealment requires proof by clear and convincing evidence as well as proof that the consumer actually relied on the manufacturer's silence."); *Turtur v. Rothschild Registry Int'l, Inc.*, No. 92 Civ. 8710, 1993 WL 338205, at *7 (S.D.N.Y. Aug. 27, 1993) ("common law fraud claims must be supported by a showing of direct reliance on the misrepresentation or omission"); *McGuire Children, LLC v. Huntress*, No. 1999/04, 2009 WL 1693725, at *11 (N.Y. Sup. Ct. June 17, 2009) ("The critical issue here is whether [plaintiff] has established by clear and convincing evidence that it . . . relied on [Defendants'] silence with respect to the . . . transaction.  Establishing reliance is essential to a claim for fraud.  To establish reliance sufficient to prevail on a claim for fraud, Plaintiff must show that it acted or refrained from acting based on the alleged . . . omission.") (quotation omitted); *Dumas v. Wyeth*, 283 F. Supp. 2d 948, 952-53 (S.D.N.Y. 2003) (explaining that "[a] plaintiff shows reliance by

demonstrating that he was induced to act or refrain from acting to his detriment because of the alleged omission," and dismissing claim for failure to show reliance on Defendants' silence because plaintiff's deposition testimony established that he did not consider the concealed information important at the time); *cf.* 60A N.Y. Jur. 2D *Fraud and Deceit* § 150 (2012) ("In order to be relied on, and therefore furnish the basis of a claim of fraud, a representation must come to the knowledge of the complaining party. Where a charge of fraud is predicated on representations made to the public, it must be shown that the plaintiff had knowledge of the representations at the time he or she acted, since otherwise he or she could not have relied on them. Thus, in order to prevail in an action based on representations made in advertising, the plaintiff must prove relevant knowledge of the advertising claims alleged.").

**Defendants' Proposed Instruction Number 31A**[*]

**Fraudulent Concealment:  Actual Reliance**

To establish that William Champagne actually relied on a concealment of material information by Defendant American Tobacco, the Plaintiff must prove, by clear and convincing evidence, that Defendant American Tobacco's concealment of a material fact was a substantial factor in William Champagne's decision to smoke or refrain from smoking.  It is not necessary for Defendant American Tobacco's concealment to have been the exclusive cause of William Champagne's decision to smoke or not.  It is sufficient for actual reliance if American Tobacco's concealment was a substantial factor—that is, one that is not slight or trivial—even if there were other factors.

**AUTHORITY:**

*Grill* jury instructions, pp. 14-15.  The instruction is taken directly from the Court's charge in *Grill*, except for changes in the names of the plaintiff and defendant.

---

[*]      This instruction is offered as an alternative to proposed instruction number 31, in the event the Court denies Defendants' request for that instruction.  By requesting this instruction in the alternative, Defendants do not waive, and expressly preserve, their request for proposed instruction 31.

**Defendants' Proposed Instruction Number 32.**

**Fraudulent Concealment:  Reasonable Reliance**

If you find that William Champagne actually relied on Defendant American Tobacco's concealment of material information, you must also decide whether that reliance was reasonable or justified.

You may not find that William Champagne was reasonable or justified in relying on the concealment of a material fact if he had the means to learn the fact and failed to exercise those means.

**AUTHORITY:**

The first paragraph is taken from the *Grill* jury instructions, at p. 15.  The second paragraph is supported by *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) ("Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable."); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980).

**Defendants' Proposed Instruction Number 33.**

**Fraudulent Concealment:  Legal Causation**

If you find that William Champagne actually and reasonably relied on American Tobacco's intentional concealment of material information it had a duty to disclose, you must then determine whether this reliance caused his injury.  In order to establish causation, Plaintiff must establish, by clear and convincing evidence, that American Tobacco's concealment of material information was a substantial factor in causing William Champagne's injury.  You should consider my earlier instructions on proximate cause (pages XX-XX), in determining if American Tobacco's concealment of a material fact was a substantial factor in William Champagne's decision to smoke or refrain from smoking.

**AUTHORITY:**

*Grill* jury instructions, p. 15.  This instruction is drawn directly from the Court's charge in *Grill*, except for changes to the names of the parties.

Defendants' Proposed Instruction Number 34.

**Fraudulent Concealment:  Specific Causation**

In order to prove that American Tobacco's concealment of the hazards of smoking its cigarettes was a cause of Mr. Champagne's injury, Plaintiff must prove, by clear and convincing evidence, that the Lucky Strike cigarettes smoked by Mr. Champagne prior to September 11, 1968 were a substantial factor in bringing about his injuries.

**AUTHORITY:**

In order to prove causation as a result of using American Tobacco's products, Plaintiff must prove that Mr. Champagne was exposed to a "toxic dose" of cigarette smoke prior to September 11, 1968.  *Parker v. Mobil Oil Corp.*, 7 N.Y. 3d 434, 448 (2006), *reargument denied*, 8 N.Y.3d 828, 828 (2007); *Briscoe-Reed v. Silicon Valley Grp.*, 6 A.D.3d 564, 565 (2d Dep't 2004).

**Defendants' Proposed Instruction Number 35.**

**Fraudulent Misrepresentation: Elements**

Plaintiff's third claim, for fraudulent misrepresentation, is asserted against Philip Morris. This claim is not asserted against American Tobacco.

Plaintiff claims that Philip Morris fraudulently represented that "Marlboro Lights" cigarettes were safer to human health than full-flavored cigarettes and easier to quit, and that William Champagne relied on this misrepresentation to his detriment. Philip Morris denies these allegations.

To prevail on this claim, Plaintiff has the burden of proving, by clear and convincing evidence:

*First*, that Philip Morris made a misrepresentation of material fact that was false and known to be false by Philip Morris;

*Second*, that in making the misrepresentation, Philip Morris intended to defraud William Champagne;

*Third*, that William Champagne actually and justifiably relied upon Philip Morris's representation;

*Fourth*, that William Champagne's reliance on a false representation caused his injury.

**AUTHORITY:**

For plaintiff's allegation, see Compl. ¶ 183.  For the elements of the claim, *see, e.g.*, *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 534 (S.D.N.Y. 2009) ("The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false; (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then

suffered an injury as a result of such reliance.") (citing *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008); *Held v. Kaufman*, 91 N.Y.2d 425, 431 (1998)); *Scott v. Fields*, 92 A.D.3d 666, 668 (2d Dep't 2012) ("To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury.") (quoting *Moore v. Liberty Power Corp., LLC*, 72 A.D.3d 660, 661 (2d Dep't 2010); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1st Dep't 1999)); *Katarao v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987) (listing elements of common-law fraud under New York law as "[1] a material, false representation, [2] an intent to defraud thereby, and [3] reasonable reliance on the representation, [4] causing damage to the plaintiff") (enumeration added); *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) ("(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance") (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001)); *Rotterdam Ventures, Inc. v. Ernst & Young, LLP*, 300 A.D.2d 963, 964 (3d Dep't 2002) ("To plead a prima facie case of fraud, the plaintiff must allege a material misstatement, known by the perpetrator to be false, made with an intent to deceive, upon which the plaintiff reasonably relies and as a result of which he sustains damages."); *Ambassador Factors v. Kandel & Co.*, 215 A.D.2d 305, 307 (1st Dep't 1995) ("The elements of fraud are a material misstatement, known by the perpetrator to be false, made with an intent to deceive, upon which the plaintiff reasonably relies and as a result of which he sustains damages.").

**Defendants' Proposed Instruction Number 36.**

**Fraudulent Misrepresentation: Representation of Fact**

The first question you will be asked to decide is whether Philip Morris made a misrepresentation of material fact concerning Marlboro Light cigarettes that was false and known to be false by Philip Morris. If you find that Philip Morris did not make such a misrepresentation, you need proceed no further on the claim of fraud.

**AUTHORITY:**

See Clinton v. Brown & Williamson Holdings, Inc., 652 F. Supp. 2d 528, 534 (S.D.N.Y. 2009) (listing first element of fraud as "a misrepresentation or a material omission of material fact which was false and known by defendant to be false"). See also Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (2011) (same).

**Defendants' Proposed Instruction Number 37.**

**Fraudulent Misrepresentation: Intent to Defraud**

If you find that Philip Morris did make a misrepresentation of material fact concerning Marlboro Light cigarettes that was false and known to be false, you must next decide whether, in making that misrepresentation, Philip Morris intended to defraud William Champagne.


**AUTHORITY:**

See *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987) (elements of fraud under New York law are "[1] a material, false representation, [2] an intent to defraud thereby, and [3] reasonable reliance on the representation, [4] causing damage to the plaintiff"); *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (same); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 123 (S.D.N.Y. 2010) (same, quoting *Katara*); *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) ("(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance") (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001)); *Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963, 964 (3d Dep't 2002) ("To plead a prima facie case of fraud, the plaintiff must allege a material misstatement, known by the perpetrator to be false, made with an intent to deceive, upon which the plaintiff reasonably relies and as a result of which he sustains damages . . . ."); *Ambassador Factors v. Kandel & Co.*, 215 A.D.2d 305, 307 (1st Dep't 1995) ("The elements of fraud are a material misstatement, known by the perpetrator to be false, made with an intent to deceive, upon which the plaintiff reasonably relies and as a result of which he sustains damages.").

**Defendants' Proposed Instruction Number 38.**

**Fraudulent Misrepresentation: Definition of Intent**

Conduct is intentional if it is purposeful—that is, the product of the Defendant's conscious objective rather than the product of mistake, accident, ~~or~~ negligence, or recklessness.

**AUTHORITY:**

*Grill* jury instructions, p. 14.  Alterations shown in <u>underline</u> and ~~strikethrough~~.

**Defendants' Proposed Instruction Number 39.**

**Fraudulent Misrepresentation: Reliance**

If you find that Philip Morris did make a misrepresentation of material fact concerning Marlboro Light cigarettes with the intent to defraud William Champagne, you must next decide whether William Champagne actually relied on Philip Morris's representation, and whether he was justified in relying on the representation.


**AUTHORITY:**

*Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 534 (S.D.N.Y. 2009); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011).

**Defendants' Proposed Instruction Number 40.**

**Fraudulent Misrepresentation:  Actual Reliance**

To establish that William Champagne actually relied on a misrepresentation of material fact concerning Marlboro Light cigarettes by Defendant Philip Morris, the Plaintiff must prove, by clear and convincing evidence, that William Champagne was induced to act, or refrain from acting, by Philip Morris's misrepresentation.


**AUTHORITY:**

*Grill*, 653 F. Supp. 2d at 496 (Plaintiff must prove that Mrs. Grill "relied on Defendants' silence regarding the hazards and addictiveness of smoking in making her decision to smoke"); *Shea v. Hambros PLC*, 244 A.D.2d 39 (1st Dep't 1998) ("To show reliance, [a plaintiff] must demonstrate that he was induced to act or refrain from acting to his detriment by virtue of the alleged misrepresentation."); *Turtur v. Rothschild Registry Int'l*, No. 92 Civ. 8710, 1993 WL 338205, at *7 (S.D.N.Y. Aug. 26, 1993) ("common law fraud claims must be supported by a showing of direct reliance on the misrepresentation or omission"); *McGuire Children, LLC v. Huntress*, No. 1999/04, 2009 WL 1693725, at *11 (N.Y. Sup. Ct. June 17, 2009) ("To establish reliance sufficient to prevail on a claim for fraud, Plaintiff must show that it acted or refrained from acting based on the alleged misrepresentation.") (quotation omitted); *cf.* 60A N.Y. Jur. 2D *Fraud and Deceit* § 150 (2012) ("In order to be relied on, and therefore furnish the basis of a claim of fraud, a representation must come to the knowledge of the complaining party. Where a charge of fraud is predicated on representations made to the public, it must be shown that the plaintiff had knowledge of the representations at the time he or she acted, since otherwise he or she could not have relied on them. Thus, in order to prevail in an action based on representations

made in advertising, the plaintiff must prove relevant knowledge of the advertising claims alleged.").

**Defendants' Proposed Instruction Number 41.**

**Fraudulent Misrepresentation:  Reasonable Reliance**

If you find that William Champagne actually relied on Defendant Philip Morris's ~~concealment of material information~~ <u>misrepresentation of a material fact concerning Marlboro Light cigarettes</u>, you must also decide whether that reliance was reasonable or justified.

You may not find that William Champagne was reasonable or justified in relying on a misrepresentation of material fact if he had the means to learn the truth and failed to exercise those means.

**<u>AUTHORITY:</u>**

The first paragraph is taken from the *Grill* jury instructions, at p. 15.   The second paragraph is supported by *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) ("Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable."); *Mallis v. Bankers Trust*, 615 F.2d 68, 80-81 (2d Cir. 1980).

**Defendants' Proposed Instruction Number 42.**

**Fraudulent Misrepresentation:  Causation (Substantial Factor)**

If you find that William Champagne did not rely on a misrepresentation of material fact concerning Marlboro Light cigarettes, or was not justified in relying on such misrepresentation, you need proceed no further on the claim of fraud.  If you find that William Champagne did rely on a misrepresentation of material fact concerning Marlboro Light cigarettes and was justified in doing so, you must next decide whether that reliance caused his injury.

In order to establish causation, Plaintiff must establish, by clear and convincing evidence, that Philip Morris's ~~concealment of material information~~ misrepresentation of material fact concerning Marlboro Light cigarettes was a substantial factor in causing William Champagne's injury.  You should consider my earlier instructions on proximate cause (pages XX-XX), in determining if Philip Morris's ~~concealment of a material fact~~ misrepresentation was a substantial factor in causing William Champagne's ~~decision to smoke or refrain from smoking~~ lung cancer.

**AUTHORITY:**

The second paragraph is drawn from the *Grill* jury instructions, p. 15.  Alterations, other than to the name of the plaintiff, are shown in underline and ~~strikethrough~~.  The first paragraph is added for context.

**Defendants' Proposed Instruction Number 43.**

**Fraudulent Misrepresentation:  Express Preemption**

The claim against Philip Morris in this case is limited to the allegation that the defendant made affirmative misrepresentations that Marlboro Light cigarettes were safer for human health than full-flavor cigarettes, and/or were easier to quit.  There is no other claim in this case against Philip Morris.  Specifically, there is no claim that Philip Morris failed to warn anyone about the health hazards of smoking cigarettes in general, about smoking light cigarettes in particular, or about the addictiveness of its cigarettes.

Since 1966, federal law has required that all packages of cigarettes carry warning labels, and since 1972, all cigarette advertising has been required to carry the same warnings.  The warnings on those labels and in those advertisements were written by Congress and in Congress's view those warnings were both necessary and sufficient to inform the public about the health consequences of smoking.  So, as part of its legislation, Congress determined that if a cigarette manufacturer applied the federally mandated warnings, a plaintiff would not be permitted to base a claim against the manufacturer on an argument that the manufacturer should have provided more or different information regarding the health hazards and addictiveness of cigarettes through the advertising or promotion of cigarettes.

So, plaintiffs are not permitted by law to make an argument that the warnings Philip Morris placed on cigarette packages or in cigarette advertisements were not adequate.  There is therefore no claim in this case that the warning labels were inadequate or that Philip Morris should have provided additional or different warnings on its packages or in its advertising or promotional materials beyond the warnings mandated by Congress.

**AUTHORITY:**

*Grill* jury instructions, pp. 2-3.  Alterations shown in <u>underline</u>.  *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 489 n.9 (1996) (the Labeling Act "specified the precise warning that Congress deemed both necessary and sufficient"); *Altria Group, Inc. v. Good*, 555 U.S. 70, 83 (2008) (recognizing distinction between a claim "about the [defendant's] statements ][and one about the warnings"); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 (1992) (Labeling Act preempts any claim asserting that a cigarette manufacturer's post-1969 advertising or promotion "should have included additional, or more clearly stated, warnings"); *Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 490-94 (S.D.N.Y. 2009) (recognizing that failure-to-warn claims are preempted); *Espinosa v. Philip Morris USA, Inc.*, 500 F. Supp. 2d 979, 984 (N.D. Ill. 2007) (rejecting "a failure to warn theory tied to Defendants' cigarette advertising and promotions and cigarette consumers' health that is preempted by the FCLAA"); *Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384,2007 WL 2398507, at *11 (S.D.N.Y. Aug. 21, 2007) (concluding that failure-to-warn claim was "squarely pre-empted" because it alleged that "PM USA's post-1969 advertising, labeling, or promotional activities relating to smoking and health should have been more specific, or should have contained clearer or additional warnings").

**Defendants' Proposed Instruction Number 44.**

**Express Preemption:  Warning Neutralization**

You also may not impose liability on Philip Morris based on any claim that, after July 1, 1969, cigarette advertising undermined or neutralized the federally mandated warnings or made them less effective.  This includes any claim or suggestion that the images used in cigarette advertising undermined awareness of the risks of smoking because the images were too attractive or made smoking or smokers appear "glamorous."

**AUTHORITY:**

Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-40; *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 547-51 (2001); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 513-24 (1992).

**Defendants' Proposed Instruction Number 45.**

**<u>Cigarettes Are a Legal Product</u>**

Cigarettes are a legal product.  You may not find either defendant liable simply because you believe that cigarettes are unsafe or dangerous, that the risk of addiction or injury outweighs any benefits people may derive from them, or because you think they should not be sold. Defendants cannot be held liable merely for manufacturing, selling, or advertising cigarettes.

**<u>AUTHORITY:</u>**

*Adamo v. Brown & Williamson Tobacco Corp.*, 11 N.Y.3d 545 (2008); *see Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001) (recognizing that "the sale and use of tobacco is lawful for adults").

**Defendants' Proposed Instruction Number 46.**

**First Amendment & Public Debate**

Statements made by either defendant as part of the public debate concerning the health consequences or addictiveness of cigarettes are protected speech under the First Amendment to the United States Constitution, and cannot form the basis for liability with respect to any of Plaintiff's claims against either defendant.


**AUTHORITY:**

U.S. CONST. amend. I.  *See also Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983); *Consol. Edison Co. v. Public Service Comm'n of New York*, 447 U.S. 530, 536 (1980); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978).

**Defendants' Proposed Instruction Number 47.**

### *Noerr-Pennington* Doctrine

A defendant cannot be held liable for attempting to influence government action.  No liability can be based on mere attempts to influence the passage or enforcement of laws.


**AUTHORITY:**

*See Eastern R.R. President Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961) (interpreting federal antitrust law); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, No. 00-7302, 2000 WL 1508873, *1 (2d Cir. Oct. 11, 2000) ("Noerr-Pennington immunity is applicable to . . . state-law claims such as fraud and tortious interference").

**Defendants' Proposed Instruction Number 48.**

**<u>Corporate Parties</u>**

In this case, the defendants are corporations.  The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.


**<u>AUTHORITY:</u>**

MODERN FEDERAL JURY INSTRUCTIONS – CIVIL P72.01 (2012) (hereinafter "MFJI").  *See also* N.Y. Const. art. X, § 4 (recognizing corporation has right to equal footing with natural persons under New York law).

**Defendants' Proposed Instruction Number 49.**

**Manufacturer Not an Insurer**

You should not assume that a manufacturer must be liable simply because someone has been injured by one of its products. Almost all products involve some risk of harm, but that does not mean that manufacturers necessarily have to compensate anyone who has been harmed. You may find either defendant liable for the harm to William Champagne only if you find plaintiff has proven the legal elements of her claim according to the instructions I have given you.

**AUTHORITY:**

New York law recognizes that a manufacturer is not an insurer. *See Micallef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 386 (1976); *Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 63 (4th Dep't 1979); *Biss v. Tenneco Inc.*, 64 A.D.2d 204, 207 (4th Dep't 1978); RESTATEMENT (SECOND) OF TORTS § 402A, cmt. K (1965); RESTATEMENT (THIRD) OF TORTS § 2(c) (2000).

**Defendants' Proposed Instruction Number 50.**

**What is and Is Not Evidence**

You are to consider only the evidence in the case. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.

You have heard testimony that witnesses had previously given in a deposition. A deposition is a procedure whereby the attorneys may question witnesses or parties under oath before a court reporter prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. A deposition is sworn testimony and you may consider the deposition testimony as part of the evidence in this case. You may also consider the deposition testimony of a witness who testified at trial for any light it may shed on the witness's credibility. You should judge deposition testimony the same way as you judge live testimony.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen. Testimony or exhibits that I have excluded or stricken or told you to disregard is not evidence and may not be considered by you in rendering your verdict. Similarly, with respect to any evidence that I directed you to consider for a limited purpose during the trial, you should consider such evidence only as I have directed you.

You are not to consider as evidence questions asked by the parties' lawyers. It is the witnesses' answers that are evidence, not the questions. You may not draw any inference or conclusions from an unanswered question. Arguments by the attorneys are not evidence, because the attorneys are not witnesses. What they have said to you in their opening statements and their summations is intended to help you understand the evidence to reach your verdict. If, however, your recollection of the evidence differs from the statements made by the lawyers in their opening statements or summations, it is your recollection that controls.

Further, any statements or rulings that I may have made do not constitute evidence. Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to what the facts are or what the verdict should be.  The rulings I have made during the trial are not any indication of my views.  Also,  you should not draw any inference from the fact that I may on occasion have asked certain questions of witnesses.  Those questions were intended only to clarify or expedite, and are not an indication of my view of the evidence.  In short, if anything I have said or done seemed to you to indicate an opinion relating to any matter you need to consider, you must disregard it.

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.  In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

Finally, statistics are inherently slippery in nature, and not irrefutable, and, like any other kind of evidence, they may be rebutted.

Finally, you may have heard or read statements outside of the courtroom about the plaintiff or about companies that manufacture tobacco products.  You may not consider any such statements in your deliberations in this case.  You are required to focus on the specific claims in this lawsuit, based solely on the evidence that has been presented to you during the course of this trial concerning the particular facts and circumstances of this case.  Anything you may have

heard or seen or read outside the courtroom about the issues in this case has no place in your deliberations.

**AUTHORITY:**

*Grill* jury instructions, pp. 20-21.  One paragraph has been added at the end, noted in underline.

**Defendants' Proposed Instruction Number 51.**

### Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is a witness's testimony about something he or she knows by virtue of his or her own senses—something the witness has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.

The other type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  Here is a simple example of circumstantial evidence:

Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet. Somebody else then walks in with a raincoat that is also dripping wet.

You cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact.  But on the combination of the facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence.  You infer on the basis of reason, experience, and common sense from an established fact the existence or the nonexistence of some other fact.  Many facts, such as a person's state of mind, can only rarely be proven by direct evidence.  Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between the two, but simply requires that you, the Jury, decide the facts in accordance with all the evidence, both direct and circumstantial.

**<u>AUTHORITY</u>:**

*Grill* jury instructions, pp. 21-22.

**Defendants' Proposed Instruction Number 52.**

**Inferences**

I have used the term "infer," and the lawyers in their arguments have asked you to draw inferences.  When you draw an inference, you conclude, from one or more established facts, that another fact exists, and you do so on the basis of your reason, experience, and common sense.  The process of drawing inferences from facts in evidence is not a matter of guesswork, suspicion, or speculation.  An inference is a reasoned, logical deduction or conclusion that you, the Jury, may draw—but are not required to draw—from the facts which have been established by either direct or circumstantial evidence.  In considering inferences, you should use your common sense and draw from the facts which you find to be proven whatever reasonable inferences you find to be justified in light of your experience.

**AUTHORITY:**

*Grill* jury instructions, pp. 22-23.

**Defendants' Proposed Instruction Number 53.**

<u>**Credibility of Witnesses**</u>

Now for the important subject of evaluating testimony.   How do you evaluate the credibility or believability of the witnesses?   The answer is that you use your plain common sense.  There is no magic formula by which you can evaluate testimony.

You should use the same tests for truthfulness that you would use in determining matters of importance in your everyday lives.  You should ask yourselves: Did the witness impress you as honest, open, and candid, or was the witness evasive and edgy as if hiding something?  How did he or she appear—that is, his or her bearing, behavior, manner, and appearance while testifying?  How responsive was the witness to the questions asked on direct examination and on cross-examination?  You should consider the opportunity the witness had to see, hear, and know about the things about which he or she testified; the accuracy of his or her memory; his or her candor or lack of candor; his or her intelligence; the reasonableness and probability of his or her testimony; its consistency or lack of consistency; and its corroboration or lack of corroboration by other credible evidence.

In short, in deciding credibility, you should size up the witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember to use your common sense, good judgment, and life experience.

Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential.

If you find that a witness intentionally testified falsely, that is always a matter of importance you should weigh carefully.  If you find that any witness has willfully testified

falsely as to any material fact—that is, as to an important matter—the law permits you to disregard completely the entire testimony of that witness upon the principles that one who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unbelievable. You may accept so much of his or her testimony as you deem true and disregard what you feel is false.

By the processes which I have just described to you, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it.

**AUTHORITY:**

*Grill* jury instructions, pp. 23-24.

**Defendants' Proposed Instruction Number 54.**

**Impeachment of Witnesses**

You have heard evidence that at some earlier time a witness has said or done something which counsel suggested was inconsistent with the witness's trial testimony.

If that prior inconsistent statement was sworn testimony, it can be considered as evidence.  Likewise, if the prior inconsistent statement was that of a party, it can be considered as evidence against that party.  Otherwise, evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.   Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**AUTHORITY:**

*Grill* jury instructions, pp. 24-25.

**Defendants' Proposed Instruction Number 55.**

**Bias of Witnesses**

In deciding whether to believe a witness, you should specifically note any evidence of bias, hostility, or affection that the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating or not cooperating with a particular party.  If you find any such bias, hostility, affection, interest, or motive, you must then consider whether or not it affected or colored the witness's testimony.

You should also take into account any evidence that a witness may benefit or suffer in some way from the outcome of the case.  Such interest in the outcome may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's bias or interest has affected his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**AUTHORITY:**

*Grill* jury instructions, pp. 25-26.

**Defendants' Proposed Instruction Number 56.**

**<u>Expert Witnesses</u>**

You have heard what is called expert testimony from [*names of witnesses*].  An expert is allowed to express an opinion on those matters about which he or she has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, the basis for his or her opinion, and his or her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept a witness's testimony merely because he or she is an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case resets solely with you.

**<u>AUTHORITY:</u>**

*Grill* jury instructions, p. 26.

**Defendants' Proposed Instruction Number 57.**

**Rulings on Evidence and Objections**

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not admissible.  Counsel also have the right and duty to ask the Court to make rulings of law.  All of those questions of law must be decided by me.  You should not show any prejudice against an attorney, or his or her client, because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked the Court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  If, however, I sustained an objection to any evidence, or if I ordered evidence stricken or disregarded, that evidence must be entirely ignored.

**AUTHORITY:**

*Grill* jury instructions, pp. 26-27.

**Defendants' Proposed Instruction Number 58.**

**Consider Damages Only If Necessary**

If plaintiff has proven, based on the instructions I have given, that one or both of the defendants is liable for one or more of the claims asserted by the plaintiff, then you must determine the damages to which plaintiff is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

**AUTHORITY:**

MFJI 77-1.

**Defendants' Proposed Instruction Number 59.**

<u>**Multiple Claims**</u>

You should not award compensatory damages more than once for the same injury.

<u>**AUTHORITY:**</u>

MFJI 77-2.

**Defendants' Proposed Instruction Number 60.**

**Damages:  Counsel's Statements Not Evidence**

If you decide to award any damages, you must base that award only on the evidence presented to you.  An attorney's statements regarding any estimate or dollar amount of damages of any kind are not evidence of any damages which may be due to the plaintiff.

**AUTHORITY:**

Attorney statements are not evidence of damages.  *See, e.g., Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1174 (2d Cir. 1974); *Ragona v. Wal-Mart Stores, Inc.*, 62 F. Supp. 2d 665, 668 (N.D.N.Y. 1999); *Acunto v. Conklin*, 260 A.D.2d 787 (3d Dep't 1999); *Merenda v. Consolidated Rail Corp.*, 248 A.D.2d 684, 687 (2d Dep't 1998); *Bechard v. Eisinger*, 105 A.D.2d 939, 941-42 (3d Dep't 1984); *Kusisto v. McLean*, 52 A.D.2d 674, 675 (3d Dep't 1976).

**Defendants' Proposed Instruction Number 61.**

**Damages:  Must Be Reasonable, Not Speculative**

Damages must be reasonable.  If you should find that plaintiff is entitled to recover damages, you may award plaintiff only such damages as will reasonably compensate her for such injury and damage as you have determined was caused by the conduct of either American Tobacco or Philip Morris USA.

You are not permitted to award speculative damages.  So, you are not to include in any verdict compensation for any prospective loss that, although possible, is not reasonably certain to occur in the future.


**AUTHORITY:**

3 KEVIN F. O'MALLEY, JAY E. GRENIG & HON WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS—CIVIL §128.60 (5th ed. 2000) (hereinafter "O'Malley").  New York law recognizes that damages may not be speculative.  *See Matter of Rothko*, 43 N.Y.2d 305 (1977).

**Defendants' Proposed Instruction Number 62.**

**<u>Damages:  Action for Wrongful Death and Conscious Pain</u>**

Plaintiff is the administratrix of the estate of William Champagne.  She claims two types of damages: damages resulting from the death of William Champagne and damages for the injuries and losses that were sustained by William Champagne before he died.  You must consider each of these claims separately.

As to the first claim, damages are the amount that you find to be fair and just compensation for the pecuniary injuries, that is economic losses, resulting from William Champagne's death to each of the persons for whom this claim is brought.  Plaintiff claims that these individuals have sustained economic loss as a result of William Champagne's death.

The law limits damages resulting from William Champagne's death to pecuniary injuries, which means economic losses.  You may not consider or make any award for grief, sorrow, mental anguish, injury to feelings, or for loss of companionship.  You must determine the economic value of William Champagne to his wife and children on June 25, 2004, when William Champagne died.

In determining that economic value, you should consider the character, habits and ability of William Champagne; the circumstances and condition of his wife and children; the services that William Champagne would have performed for them; the portion of his earnings that William Champagne would have spent in the future for the care and support of [children]; the age and life expectancy of William Champagne; the age and life expectancies of his wife and children; and the intellectual, moral, and physical training, guidance and assistance that William Champagne would have given the children had he lived. You should also consider the amount, if any, by which William Champagne, if he had lived, would have increased his estate from his earnings and thus added to the amount that would have been inherited from him, provided that

you find that at least one of Eileen Clinton, Jennifer Champagne, or William Champagne III would have been alive to inherit from him had William Champagne not died on June 25, 2004.

William Champagne was, at the time of his death in 2004, 53 years old  and, according to the life expectancy tables, had a life expectancy of 24.9 years.[*]  His spouse was then 50 and had a life expectancy of 31.7 years.[†]  The children were 21 and 19, and had life expectancies, respectively of 59.2[‡] and 55.6[§] years.  Life expectancy tables are simply statistical averages.  A person might live longer or die sooner than the time indicated by those tables.  The figures I just mentioned are not controlling but may be considered by you together with the evidence you heard concerning the health, habits, and activities of William Champagne prior to his death and those of his wife and children in determining what their respective life expectancies were at the time William Champagne died.

You must decide what portion of his earnings William Champagne would have spent for the care and support of his wife and children.  In making your decision, you must consider: the amount William Champagne earned per year prior to his death; the part of those earnings that William Champagne contributed to the care and support of his wife and children, and the pattern of those contributions;  William Champagne's employment at the time that he died; the probabilities with respect to his future earnings; the risks of his occupation; the condition of his health and the length of time that he would reasonably be expected to continue working.  As to this last factor, the work expectancy of William Champagne was, according to work expectancy

---

[*]      PJI, Appendix A, Table 2.  "Life table for males:  United States, 1997"

[†]      *Id.*, Table 3.  "Life table for females:  United States, 1997"

[‡]      *Id.*

[§]      *Id.*, n. 2.

tables, 8.7 years.[*]  That figure, like the life expectancy figures I mentioned earlier, is only a statistical average and is furnished simply as a guide.  In determining what portion of his available earnings William Champagne would have applied in the future to the care and support of his children, you should consider that William Champagne was not legally obligated to contribute to the support of any child who became 21 years old.  However, William Champagne could have stopped supporting a child under 21 who became self-supporting or could have decided to continue to support a child who was older than 21.  If, on the evidence, you deem it reasonably probable that any of the children would have become self-supporting prior to age 21, or that William Champagne would have contributed to the support of any of them beyond age 21, you may use as the date of termination of support of that child a date which is earlier or later than 21 as you deem appropriate.

As I stated before, it is the economic value of William Champagne to his wife and children that you must decide.  That value is incapable of exact proof.  Taking into account all the factors I have discussed, you must use your own common sense and sound judgment based on the evidence in determining the amount of the economic loss suffered by his wife and children.

As to the claim for damages sustained by William Champagne before he died, which is the second claim I mentioned to you earlier, plaintiff is entitled to recover such sum as you find will fairly and justly compensate for the pain and suffering actually endured by William Champagne during the time he was conscious from the moment of injury to the moment of death.  In addition, plaintiff is entitled to recover those reasonable expenses that were paid or

---

[*]      PJI, Appendix B, Table 2.  "Table of working life for men who have not completed high school, 1979-80"

incurred by Eileen Clinton for medical aid, nursing and other care required to treat William Champagne's injuries.

**AUTHORITY:**

1B NY PJI 3d, Appendices (2012); *Carter v. New York City Health and Hosps. Corp.*, 47 A.D.3d 661 (2d Dep't 2008).

**Defendants' Proposed Instruction Number 63.**

**Damages:  Loss of Services**

Plaintiff also seeks damages for the loss she sustained by the loss of her spouse's services and society.  This claim is asserted against Philip Morris only.

In deciding the amount of such damages, you may take into consideration the nature and extent of William Champagne's services and society before the injury, including his disposition, temperament, character and attainments; the interest he showed in his home; the social life of his family and in the comfort, happiness, education and general welfare of the members of the family; the services he rendered in superintending the household, training the children, assisting his spouse in the management of the business or affairs in which the spouse was engaged, if any; his acts of affection, love and sexual intercourse and the extent to which the injuries he sustained prevented him from performing such services and providing such society.  You may award plaintiff such an amount based upon the evidence and upon your own observation, experience and knowledge conscientiously applied to the facts and circumstances as in your judgment will compensate her for the pecuniary loss that you find she has sustained by reason of William Champagne's inability to perform such services and provide such society prior to his death as a result of his injuries.

**AUTHORITY:**

1B NY PJI 2:315 (2012).  *See also Rothfarb v. Brookdale Hosp.*, 527 N.Y.S.2d 473, 475 (2d Dep't 1988) (loss of consortium damages are "limited to the period prior to decedent's death").  The proposed instruction states that the loss of services claim is asserted against PM USA only, because under New York law, where the alleged tortious conduct and exposure to defendant's product occurs before marriage, the surviving spouse does not have a claim for loss

of services.  *See Consorti v. Owens-Corning Fiberglas Corp.*, 86 N.Y.2d 449, 454 (1995); *Anderson v. Eli Lilly & Co.*, 79 N.Y.2d 797, 798-99 (1991); 1B NY PJI 3d 2:315, at 937 (2012).

**Defendants' Proposed Instruction Number 64.**

**<u>Damages Phase:  No Punitive Damages</u>**

If you should find that the plaintiff is entitled to a verdict, in fixing the amount of your award you may not include in, or add to an otherwise just award, any sum for the purpose of punishing the defendants, or to serve as an example or warning for others.  You may not include in your award any sum for court costs or attorney fees.

**<u>AUTHORITY:</u>**

3 O'Malley §128.80.  This Court has ruled that punitive damages are not available in this case.

**Defendants' Proposed Instruction Number 65.**

**Exhibits and Testimony; Communications With Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the court – should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on an issue until after a unanimous verdict is reached.

**AUTHORITY:**

MFJI 78-1.

**Defendants' Proposed Instruction Number 66.**

**<u>Duty To Deliberate / Unanimous Verdict</u>**

You will now return to decide the case.  In order to prevail, the plaintiff must sustain his burden of proof as I have explained to you with respect to each element of the complaint.  If you find that the plaintiff has succeeded, you should return a verdict in her favor on that claim.  If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict in favor of the defendant on that claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest conviction concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of the case based on your consideration of the evidence and your discussion with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

**<u>AUTHORITY:</u>**

MFJI 78-3.

**Defendants' Proposed Instruction Number 67.**

**<u>Selection of Foreperson</u>**

When you retire, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

**<u>AUTHORITY:</u>**

MFJI 78-5.

**Defendants' Proposed Instruction Number 68.**

<u>**Verdict**</u>

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.  The answer to each question on the form must be unanimous.

I will stress that each of you should be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

<u>**AUTHORITY:**</u>

MFJI 78-6.