UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| EILEEN A. CLINTON, on behalf of herself and as administratrix of the estate of WILLIAM A. CHAMPAGNE, JR.,<br><br>                  Plaintiff,<br><br>   -against-<br><br>BROWN & WILLIAMSON HOLDINGS, INC., as successor by merger to AMERICAN TOBACCO COMPANY, and PHILIP MORRIS USA INC.,<br><br>                  Defendants. | **05 Civ. 9907 (CS) (LMS)**<br>**ECF Case** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## <u>DEFENDANT PHILIP MORRIS USA INC.'S TRIAL MEMORANDUM</u>

Defendant Philip Morris USA Inc. ("PM USA") respectfully submits this Trial Memorandum pursuant to the Court's March 28, 2012 Case Management Order. This Memorandum reviews the elements of Plaintiff's claim against PM USA for fraudulent misrepresentation.

## I.     Introduction

Plaintiff Eileen Clinton, individually and on behalf of the estate of her husband William Champagne, has brought suit against PM USA and its codefendant, Brown and Williamson, as the successor in interest to American Tobacco ("ATC"), seeking damages arising from Mr. Champagne's cancer and death. Mr. Champagne was a daily cigarette smoker for many years. Plaintiff alleges that he began smoking Lucky Strikes in the 1960s. He smoked full-flavored cigarettes (Lucky Strikes and Marlboro Reds) for approximately 20 years, until he switched to Marlboro Lights in 1986. He continued to smoke Marlboro Lights for approximately 17 years until 2003, when he quit smoking altogether. Mr. Champagne died in 2004, when he was 53.

Because of pre-trial rulings and Plaintiff's decision to narrow or abandon certain causes of action, the claims to be tried relate to two discrete, non-contiguous time periods. Plaintiff asserts claims for failure to warn and fraudulent concealment against ATC. Those claims are limited to ATC's conduct prior to Mr. Champagne's 18th birthday on September 11, 1968. By contrast, the sole claim against PM USA—for fraudulent misrepresentation with respect to the sale of Marlboro Lights cigarettes—relates to Mr. Champagne's use of Marlboro Lights between 1986 and 2003. No claims remain for the 18 year gap between 1968 and 1986, during which Mr. Champagne allegedly smoked both Lucky Strikes and Marlboro Reds.

The crux of the common law fraud claim is that PM USA purportedly deceived Mr. Champagne by labeling Marlboro Lights as "light" and as having "Lowered Tar and Nicotine." Plaintiff alleges that these descriptors were false and misleading because, although Marlboro Lights cigarettes yielded less tar and nicotine than Marlboro Reds when tested pursuant to the standardized method employed by the Federal Trade Commission, some Lights smokers actually received the same amount of nicotine and tar as Reds smokers, or higher amounts, because they engaged in "compensatory" smoking behavior — i.e., they smoked more cigarettes or smoked them differently. *See* Compl. ¶¶ 184, 186, 188-89, 192-93; Decl. of William A. Farone at 8. Plaintiff also alleges that PM USA's product labels and advertisements fraudulently conveyed the impression that Marlboro Lights were safer and easier to quit than full-flavored cigarettes, and that Mr. Champagne relied on these alleged misrepresentations to his detriment.

## II.    Preempted Claims

As the Court recognized in its August 7, 2012 Order, federal law bars Plaintiff from arguing that the congressionally mandated warnings PM USA placed on cigarette packages and in cigarette advertisements were inadequate. Similarly, Plaintiff is barred from presenting evidence or argument suggesting that after July 1, 1969, cigarette advertising undermined or

neutralized the effects of the warning labels.  Dkt. 327 (Aug. 7, 2012 Order), at 1 (granting as unopposed PM USA's Motion *in Limine* No. 1 to Exclude Evidence and Argument Related to Preempted Theories of Liability).  In particular, Plaintiff cannot seek to impose liability on PM USA for failing to warn smokers about compensatory smoking behavior, or for failing to warn Mr. Champagne about the hazards of smoking generally or of smoking lights cigarettes in particular.

In addition, it is beyond dispute that cigarettes are a legal product.  Plaintiff may not suggest to the jury that it may hold PM USA liable simply because it believes that cigarettes are unsafe or dangerous, that the risk of addiction or injury outweighs any benefits people may derive from them, or because it thinks they should not be sold.  In other words, PM USA may not be held liable merely for manufacturing, selling, or advertising cigarettes.  *See Adamo v. Brown & Williamson Tobacco Corp.*, 11 N.Y.3d 545, 551 (2008); *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001) (recognizing that "the sale and use of tobacco is lawful for adults").

## III.    Burden of Proof

Plaintiff has the burden of proving every element of her fraudulent misrepresentation claim by clear and convincing evidence.  *See Grill v. Phillip Morris USA, Inc.*, 653 F. Supp. 2d 481, 494 (S.D.N.Y. 2009); *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 784-85 (2d Cir. 2003) ("Under New York law, each element of a fraud claim must be proven by clear and convincing evidence."); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 233, 234 (1st Dep't 1996) (reversing verdict after bench trial because plaintiff failed to prove by clear and convincing evidence both defendant's fraudulent intent and plaintiff's justifiable reliance).  *See also Bd. of Educ. v. Sargent, Webster, Crenshaw & Folley*, 146 A.D.2d 190, 199 (3d Dep't 1989) (affirming directed verdict in defendant's favor on fraudulent concealment claim where "there

was far from clear and convincing evidence that  … [defendant] had anything but a genuine belief" concerning events at issue).

## IV.     Elements of Fraudulent Misrepresentation Under New York Law

To prevail on her claim against PM USA, Plaintiff has the burden of proving, by clear and convincing evidence, each of the following elements: (1) PM USA made a misrepresentation of material fact that was false and known to be false by PM USA; (2) in making the misrepresentation, PM USA intended to defraud Mr. Champagne; (3) Mr. Champagne actually and justifiably relied upon PM USA's representation; and (4) Mr. Champagne's reliance on a false representation caused his injury.  *See Katara v. D.E. Jones Commodities, Inc*., 835 F.2d 966, 970-71 (2d Cir. 1987) (recognizing that the elements of fraud under New York law are "[1] a material, false representation, [2] an intent to defraud thereby, and [3] reasonable reliance on the representation, [4] causing damage to the plaintiff"); *accord Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 534 (S.D.N.Y. 2009).

### A.     Misrepresentation of Material Fact

The first element that Plaintiff must prove is that PM USA made a misrepresentation of material fact concerning Marlboro Lights cigarettes that it knew to be false at the time.  *See Clinton*, 652 F. Supp. 2d at 534 (listing first element of fraud as "a misrepresentation or a material omission of material fact which was false and known by defendant to be false"); *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011) (same).  Here, Plaintiff alleges that PM USA's descriptors "Lights" and "Lowered Tar and Nicotine" were misrepresentations of material fact, and Plaintiff must prove that these statements were false and known to be false at the time they were made.

New York law is clear that to prove a claim for common law fraud, a plaintiff must establish by clear and convincing evidence that the defendant's statement was false "when

made." A statement that was *true* when made cannot give rise to a claim for fraud. *See*, *e.g.*, *Centro Empresarial Cempresa S.A. v Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (listing the "basic elements of fraud" as "a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that *it was false when made*, justifiable reliance by the plaintiff, and resulting injury") (emphasis added).[1]

### B.  Intent to Defraud

It will also be Plaintiff's burden to prove by clear and convincing evidence that PM USA *intended* to defraud Mr. Champagne. *See Katara*, 835 F.2d at 970-71 (holding that "intent to defraud" is an essential element of a common law fraud claim under New York law); *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (same); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 123 (S.D.N.Y. 2010) (same, quoting *Katara*); *Meisel v. Grunberg*, 651 F. Supp. 98, 118 (S.D.N.Y. 2009) (requiring the plaintiff to prove that "the defendant intended to defraud the plaintiff" by means of a "material false representation") (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001)); *Ambassador Factors v. Kandel & Co.*, 215

---

[1]    *See also Serino v. Lipper*, 47 A.D.3d 70, 78 (1st Dep't 2007) (same); *Monaco v. N.Y. Univ. Med. Ctr.*, 213 A.D.2d 167, 169 (1st Dep't 1995) (same); *Ederer v. Gursky*, 35 A.D.3d 166, 167 (1st Dep't 2006) (affirming dismissal of fraud claim because, inter alia, plaintiff had not produced "any evidence that the statement *was false when made* and intended to deceive") (emphasis added); *People v. Charles Schwab & Co.*, 33 Misc. 3d 1221A, 2011 WL 5515434, at *8 (slip op.) (N.Y. Sup. Ct. Oct. 24, 2011) ("The complaint cannot survive if it fails to allege facts demonstrating that a statement *was false or misleading when made*.") (emphasis added) (discussing common law fraud in the context of a case about a statutory cause of action); *Pacnet Network v. KDDI Corp.*, 25 Misc. 3d 1203A, 2009 WL 2999200, at *4 (slip op.) (N.Y. Sup. Ct. Sept. 16, 2009) ("[T]o be actionable as either negligent or fraudulent misrepresentations, KDDI's alleged statements about the MCC repeaters *must have been false when made*.") (emphasis added), *aff'd*, 78 A.D.3d 478, 479 (1st Dep't 2010) ("The fraudulent inducement and negligent misrepresentation causes of action were properly dismissed because they do not allege an intentional misrepresentation of any material *existing* facts, but only statements of prediction or expectation. The allegation that defendant knew the performance prediction was false is indefinite and conclusory, and therefore *not actionable, absent allegations that the prediction was contradicted by a concrete, existing fact* that defendant either intentionally failed to disclose or negligently failed to discover.") (internal quotation omitted) (emphases added).

A.D.2d 305, 307 (1st Dep't 1995) ("The elements of fraud are a material misstatement, known by the perpetrator to be false, made with an intent to deceive, upon which the plaintiff reasonably relies and as a result of which he sustains damages.").

To satisfy the "intent to deceive" element, Plaintiff must demonstrate that PM USA's alleged false statements concerning Marlboro Light cigarettes were purposeful; in other words, that they were the product of PM USA's conscious plan to deceive rather than the product of mistake, accident, negligence, or recklessness. *See Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963, 964 (3d Dep't 2002) (recognizing that an affirmative fraud claim requires proof of a material misstatement "known by the perpetrator to be false [and] made with an intent to deceive"). Moreover, a good faith belief in the veracity of the statements negates scienter. As the Court aptly pointed out at the June 25, 2012 hearing in this case, in order to prevail on her fraud claim against PM USA, Plaintiff will have to prove "both" that PM USA's statement was "false as a matter of fact based on what we know today," *and* "that the defendant back at the time knew it was false." *Clinton v. Brown & Williamson Holdings, Inc.*, No. 05 Civ. 9907, June 25, 2012 Hr'g at 150:05-07.

### C.    Reliance

The next element Plaintiff will need to establish, also by clear and convincing evidence, is that Mr. Champagne actually relied on PM USA's allegedly fraudulent statements about Marlboro Light cigarettes in deciding to purchase them, and that his reliance was justifiable. *See Clinton*, 652 F. Supp. 2d at 534; *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011).

To establish that Mr. Champagne actually relied on an alleged fraudulent misrepresentation of material fact about Marlboro Light cigarettes by PM USA, Plaintiff must prove, by clear and convincing evidence, that it was PM USA's statements about Lights that induced Mr. Champagne "to act or refrain from acting to his detriment," and not reliance on

statements made by third parties.  *Shea v. Hambros PLC*, 244 A.D.2d 39, 46-47 (1st Dep't 1998)

(quotation omitted); *Turtur v. Rothschild Registry Int'l, Inc*., 1993 WL 338205, at *7 (S.D.N.Y.

Aug. 27, 1993) ("[C]ommon law fraud claims must be supported by a showing of direct reliance

on the misrepresentation or omission."); *McGuire Children, LLC v. Huntress*, 2009 WL

1693725, at *11 (N.Y. Sup. Ct. June 17, 2009) ("To establish reliance sufficient to prevail on a

claim for fraud, Plaintiff must show that it acted or refrained from acting based on the alleged

misrepresentation.").[2]

Nor can Plaintiff meet her burden of showing reasonable and justifiable reliance if the

evidence establishes that the decedent had the means to learn the truth and failed to take

advantage of those means.  *See Royal Am. Managers, Inc. v. IRC Holding Corp*., 885 F.2d 1011,

1016 (2d Cir. 1989) ("Where the representation relates to matters that are not peculiarly within

the other party's knowledge and both parties have available the means of ascertaining the truth,

New York courts have held that the complaining party should have discovered the facts and that

any reliance under such circumstances therefore would be unjustifiable."); *Mallis v. Bankers

Trust*, 615 F.2d 68, 80-81 (2d Cir. 1980), *abrogated in part on other grounds by Peltz v. SHB

Commodities*, 115 F.3d 1082, 1090 (2d Cir. 1997).

### D.   Causation

Finally, Plaintiff must prove by clear and convincing evidence that Mr. Champagne

suffered injuries that were proximately caused by his reliance on PM USA's alleged

---

[2]      *Cf.* 60A N.Y. Jur. 2d *Fraud and Deceit* § 150 (2d ed. 2012) ("In order to be relied on, and
therefore furnish the basis of a claim of fraud, a representation must come to the knowledge of
the complaining party.  Where a charge of fraud is predicated on representations made to the
public, it must be shown that the plaintiff had knowledge of the representations at the time he or
she acted, since otherwise he or she could not have relied on them.  Thus, in order to prevail in
an action based on representations made in advertising, the plaintiff must prove relevant
knowledge of the advertising claims alleged.").

misrepresentations about Marlboro Light cigarettes. *See Ambassador Factors v. Kandel & Co.*, 215 A.D.2d 305, 307 (1st Dep't 1995). In particular, Plaintiff must show that the alleged fraudulent statements were a "substantial factor" in causing the injury — that is, that PM USA's statements had such an effect in producing Mr. Champagne's lung cancer that reasonable people would regard those statements as a cause of his illness. *See Apollo H.V.A.C. Corp. v. Halpern Constr.*, *Inc.*, 55 A.D.3d 855 (2d Dep't 2008) ("[P]roof that the allegedly fraudulent omission was a substantial factor in causing identifiable loss to the plaintiff is essential to a fraud claim."). Therefore, Plaintiff must demonstrate a direct causal relationship between Mr. Champagne's lung cancer and the challenged statements about Marlboro Lights. *See Clinton*, 652 F. Supp. 2d at 536 (citing *Cohen v. Houseconnect Realty Corp.* 289 A.D.2d 277, 278 (App. Div. 2001)). In other words, because Plaintiff asserts a common law fraud claim, she must adduce proof that Mr. Champagne's lung cancer and death were caused by his reliance on a false representation about Marlboro Lights. Evidence that smoking in general caused Mr. Champagne's lung cancer and death – or even evidence that smoking Marlboro Light cigarettes in particular caused his injuries – is insufficient to establish that the alleged fraudulent statement was a *proximate* cause.

## V.    Damages Limitations under New York Law

Plaintiff seeks compensatory damages on behalf of herself, on behalf of Mr. Champagne's estate, and on behalf of the distributees of Mr. Champagne's estate for (1) wrongful death, (2) survival personal injury claims, and (3) loss of consortium. New York law limits these damages in a variety of ways.

### A.    Damages Recoverable In Connection With Plaintiff's Wrongful Death Claim

In New York, damages recoverable through a wrongful death claim are limited by statute to pecuniary, or economic, injuries. *See* N.Y. Estate Powers & Trusts Law § 5-4.3(a) (McKinney 2009) (plaintiff may be awarded "fair and just compensation for the pecuniary

injuries resulting from the decedent's death"); *see also Leger v. Chasky*, 55 A.D.3d 564, 565 (2d Dep't 2008) (noting that a wrongful death plaintiff is entitled to recover "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought") (citation and internal quotations omitted).  Pecuniary loss reflects "the economic value of the decedent to each distributee at the time decedent died." *Huthmacher v. Dunlop Tire Corp.*, 309 A.D.2d 1175, 1176 (4th Dep't 2003).  The following types of damages are not pecuniary and are thus not recoverable through a wrongful death claim: grief, loss of society, affection, conjugal fellowship, loss of companionship, the value of the decedent's loss of enjoyment of life, and any damages that could have been recovered in a personal injury action had the decedent survived.  *See Liff v. Schuldkrout*, 49 N.Y.2d 622, 633 (1980); *Bumpurs v. New York City Housing Auth.*, 139 A.D.2d 438, 439 (1st Dep't 1988); *Sand v. Chapin*, 238 A.D.2d 862, 864 (3d Dep't 1997); *Leger*, 55 A.D.3d at 565; *Ruiz v. New York City Health & Hosps. Corp.*, 165 A.D.2d 75, 79-80 (1st Dep't 1991).

> **B.      Personal Injury Damages Recoverable In Connection With Plaintiff's Survival Claim**

Recoverable damages for personal injury in a survival action "are limited to those accruing before death and shall not include damages for or by reason of death except that the reasonable funeral expenses of the decedent, paid by the estate or for the payment of which the estate is responsible, shall be recoverable in such action."  N.Y. Estate Powers & Trusts Law § 11-3.3(a) (McKinney 2009).  Thus, Mr. Champagne's estate may not recover personal injury damages for "future loss of earnings or loss of services."  *Huthmacher*, 309 A.D.2d at 1176.

> **C.      Damages Recoverable In Connection With Plaintiff's Loss Of Consortium Claim**

Under New York law, the plaintiff in a survival action may recover damages for loss of consortium encompassing "such elements as love, companionship, affection, society, sexual

relations, solace and more." *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 502 (1968).  However, as with all personal injury damages, loss of consortium damages are "limited to the period prior to decedent's death." *Rothfarb v. Brookdale Hosp.*, 139 A.D.2d 720, 722 (2d Dep't 1988); *LaMarca v. United States*, 31 F. Supp. 2d 110, 132-33 (E.D.N.Y. 1998).  Thus, Plaintiff cannot recover loss of consortium damages resulting from or occurring after Mr. Champagne's death.  *See Maidman v. Stagg*, 82 A.D.2d 299, 301-02 (2d Dep't 1981); *see also Sand*, 238 A.D.2d at 864 (dismissing plaintiff's claim for "permanent loss of consortium," *i.e.*, "from the time of decedent's death to and through plaintiff's life expectancy.").

Dated:  New York, New York
      October 12, 2012

    Respectfully Submitted,

    WINSTON & STRAWN LLP

    By:  /s/  Thomas J. Quigley
        Thomas J. Quigley
        Luke A. Connelly
        Jennifer L. Malin

    200 Park Avenue
    New York, N.Y. 10166
    (212) 294-6700

    Scott A. Chesin
    MAYER BROWN LLP
    1675 Broadway
    New York, N.Y. 10019
    (212) 506-2500

    Jeffrey M. Wagner
    KAYE SCHOLER LLP
    3 First National Plaza
    70 West Madison Street, Suite 4200
    Chicago, Illinois 60602-4231

    *Attorneys for Defendant Philip Morris USA Inc.*

-10-