UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                      :

EILEEN A. CLINTON, on behalf of herself and
as, administratrix of the estate of WILLIAM A.     :
CHAMPAGNE, JR.,

                      :              ECF Case

             Plaintiff,

                      :      05-Civ-9907 (CS) (LMS)

v.

                      :

BROWN & WILLIAMSON  HOLDINGS, INC.,
as successor by merger to AMERICAN
TOBACCO COMPANY, AND PHILIP MORRIS  :
USA INC.,

                      :

            Defendant.

                      :
------------------------------------------------------------- X

**THE AMERICAN TOBACCO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY JUDGMENT TO INCLUDE PRE AND POST-JUDGMENT INTEREST AND MOTION FOR NEW TRIAL ON CERTAIN ELEMENTS OF DAMAGES ONLY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Plaintiff's Motion Inappropriately Seeks To Undermine The Role Of The Jury To Determine Damages ................................................................................................ 2

II.     The Jury's Damage Awards Were Supported By The Factual Record Presented At Trial ............................................................................................................................ 6

       A.     The Facts In Evidence Support The Jury's Award of $25,000 For Mr. Champagne's Pain And Suffering ................................................................ 7

       B.     The Facts In Evidence Support The Jury's Award of $20,000 For Plaintiff's Loss of Consortium ................................................................ 9

       C.     Plaintiff Asked For Damages Not To Be Awarded To Mr. Champagne's Children, And The Facts In Evidence Support The Jury's Decision ................. 10

       D.     The Cases Plaintiff Cites Do Not Require This Court To Upset The Jury's Determination ................................................................................ 11

III.    Liability And Damages Cannot Be Severed ........................................................... 14

IV.    Pre-Judgment Interest Should Be Calculated From A Reasonable Intermediate Date Between Date Of Death And Date Of Judgment ................................................. 17

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. State,*
No. 97838, 2001 BL 856, *6 (N.Y. Ct. C0l. Feb. 2, 2001)....................................20

*Batchu v. 5817 Food Corp.,*
56 A.D.3d 402 (2d Dep't 2008) .........................................................................2, 3

*Berner v. British Commonwealth Pac. Airlines, Ltd.,*
346 F.2d 532 (2d Cir. 1965)..................................................................................10

*Blakeslee v. Ruffo,*
No. 97-9362, 2000 U.S. App. LEXIS 11013 (2d Cir. 2000) .................................14

*Bloom v. City of New York,*
202 A.D.2d 465 (2d Dep't 1994) ..........................................................................20

*Britt v. Garcia,*
457 F.3d 264 (2d Cir. 2006)....................................................................................4

*Brooks v. Brattleboro Mem'l Hosp.,*
958 F.2d 525 (2d Cir. 1992)..................................................................................15

*Caskey v. Village of Wayland,*
375 F.2d 1004 (2d Cir. 1967)......................................................................14, 15, 16

*Colao v. Brightwater Towers, Inc.,*
88 A.D. 2d 580 (2d Dep't 1982) .............................................................................6

*Dimick v. Schiedt,*
294 U.S. 474 (1935).................................................................................................7

*Garcia v. O'Keefe,*
2004 N.Y. Misc. LEXIS 1827 (Sup. Ct. N.Y. Co. Sept. 9, 2004),
*reversed on other grounds,* 2006 N.Y. App. Div. LEXIS 13733
(1st Dep't Nov. 21, 2006) ................................................................................18, 19

*Garrison v. Lapine,*
72 A.D.3d 1441 (3d Dep't 2010) ..........................................................................13

*Gasoline Products Co. v. Champlin Refining Co.,*
283 U.S. 494 (1931)...............................................................................................14

*Gasperini v. Center for Humanities, Inc.,*
518 U.S. 415 (1996).................................................................................................7

TABLE OF AUTHORITIES
(Cont'd)

Page

*Geressy v. Digital Equip. Corp.*,
980 F. Supp. 640 (E.D.N.Y. 1997) .......................................................................3, 6

*Gibbs v. United States*,
559 F.2d 36 (2d Cir. 1979).........................................................................................2

*Harris v. New York City Health and Hosp. Corp.*,
272 A.D.2d 372 (2d Dep't 2000), *appeal denied*, 95 N.Y.2d 770 (2000) .............20

*Hatfield v. Seaboard Airline RR Co.*,
396 F.2d 721 (5th Cir. 1968) ...................................................................................17

*Hudson v. Manhattan and Bronx Surface Transit Operating Author.*,
188 A.D.2d 355 (1st Dep't 1992) .............................................................................20

*Hynes v. State*,
No. 88481, 2001 BL 828, *11 (N.Y. Ct. Cl. Oct. 18, 2001)....................................20

*In re Brooklyn Navy Yard Asbestos Litig.*,
971 F.2d 831 (2d Cir. 1992).................................................................................11, 12

*In re New York Asbestos Litig.* (Dummit), 36 Misc. 3d 1234A,
2012 N.Y. Misc. LEXIS 4057, at *73 (Sup. Ct., NY Co. 2012) ............................12

*Mekdeci v. Merrell Natl. Labs.*,
711 F.2d 1510 (11th Cir. 1983) ..........................................................................15, 17

*Milbrandt v. A. P. Green Refractories Co.*,
79 N.Y.2d 26 (1992) ...........................................................................18, 19, 20, 21

*Miller v. Brownell Steel Corp.*,
No. 91-CV-1198, 1993 U.S. Dist. LEXIS 9009
(N.D.N.Y. June 28, 1993)...............................................................................2, 6, 7, 9

*Motelson v. Ford Motor Co.*,
No. 2009-04215, 2009-06707, 2012 N.Y. App. Div.
LEXIS 8623 (2d Dep't Dec. 19, 2012) ...................................................................14

*Pahuta v. Massey-Ferguson, Inc.*,
997 F. Supp. 379 (W.D.N.Y. 1998) ................................................................2, 3, 4, 6

*Perez v. Columbia Operating Co., Inc.*,
203 A.D.2d 347 (2d Dep't 1994) .............................................................................20

*Raedle v. Credit Agricole Indosuez*,
670 F.3d 411 (2d Cir. 2011)........................................................................................2

TABLE OF AUTHORITIES
(Cont'd)

Page

*Rosenberg v. Aeschliman*,
    2004 U.S. Dist. LEXIS 10406 (S.D.N.Y. June 4, 2004) .......................................................17

*Schmertz v. Presbyterian Hosp.*,
    567 N.Y.2d 691 (1st Dep't 1991) ...........................................................................18, 19, 21

*Sorokin v. Food Fair Stores, Inc.*,
    51 A.D.2d 592 (2d Dep't 1976).....................................................................................3

*Tucker v. City of New York*,
    54 A.D.2d 930 (2d Dep't 1976)...................................................................................12

*Vidrine v. Kansas City So. Ry.*,
    466 F.2d 1217 (5th Cir. 1972) ....................................................................................15

*Vizzini v. Ford Motor Co.*,
    569 F.2d 754 (3d Cir. 1977)........................................................................................15

*Wild v. Catholic Health System*,
    85 A.D.3d 1715 (4th Dep't 2011)................................................................................13

*Woodling v. The Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987)....................................................................................18, 19

**STATUTES**

CPLR § 5001(b)....................................................................................................18, 19, 20

CPLR § 5501(c) .................................................................................................3, 7,11, 12

## **INTRODUCTION**

Defendant The American Tobacco Company ("ATC")[1] submits this memorandum in opposition to Plaintiff's Motion to Modify Judgment to Include Pre and Post-Judgment Interest and Motion for New Trial on Certain Elements of Damages Only ("Plaintiff's Motion" or "Pl.'s Mot."). For the reasons stated herein, Plaintiff's Motion must be denied. After almost three full days of deliberation, the jury returned a verdict in Plaintiff's favor on her negligent failure to warn claim, awarding Plaintiff $25,000 for Mr. Champagne's pain and suffering and $20,000 for Plaintiff's loss of consortium. The jury also awarded Plaintiff $1.3 million in economic damages.[2] Plaintiff now asks this Court to keep the jury's liability determination intact but allow her a second chance at damages before a different jury. But the jury here did its job and awarded reasonable compensation based on the evidence at trial, including its assessment of the credibility of the trial witnesses. Moreover, even if the Court were to rule that the jury's compensatory awards are inadequate (which they are not), the entire verdict (not just the damages award Plaintiff dislikes) must be set aside. It is not appropriate here to effectively sever the intertwined issues of liability and damages for a new trial in the manner that Plaintiff is proposing. Finally, Plaintiff's calculation of pre-judgment interest is erroneous. Under New York law, pre-judgment interest must be calculated from a reasonable intermediate date. Here, that date is the mid-point between the date of death and date of judgment (i.e., September 21, 2008), not Mr. Champagne's date of death as Plaintiff claims.

---

[1] Defendant Brown and Williamson Holdings, Inc. is the successor by merger to ATC.

[2] This amount is in addition to the $1.3 million that the jury heard Plaintiff had already received from the sale of Mr. Champagne's business. 11/15/2012 Trial Tr. at 367.

## ARGUMENT

**I.    Plaintiff's Motion Inappropriately Seeks To Undermine The Role Of The Jury To Determine Damages.**

Courts must defer to juries as the triers of fact to make decisions on inherently subjective matters, including damage awards in personal injury actions. *Batchu v. 5817 Food Corp.*, 56 A.D.3d 402, 403 (2d Dep't 2008) ("The amount of damages awarded for personal injuries is primarily [a] question of fact for the jury.") (internal quotation marks and citations omitted). Awards for pain and suffering and loss of consortium, in particular, are inherently subjective and peculiarly within the province of the jury. *Pahuta v. Massey-Ferguson, Inc.*, 997 F. Supp. 379, 385 (W.D.N.Y. 1998) ("Assigning dollar amounts to pain and suffering is an inherently subjective determination and peculiarly within the province of the jury."); *see also Gibbs v. United States*, 559 F.2d 36, 39 (2d Cir. 1979) ("measuring pain and suffering in dollars is inescapably subjective"); *Miller v. Brownell Steel Corp.*, No. 91-CV-1198, 1993 U.S. Dist. LEXIS 9009, at *5 (N.D.N.Y. June 28, 1993) ("Like damages for pain and suffering, damages for loss of consortium are inherently subjective."). In arriving at these subjective determinations, the jury's role is to weigh a variety of facts and circumstances presented by the record. *See Miller*, 1993 U.S. Dist. LEXIS 9009, at *5 ("A claim for loss of consortium involves a myriad of considerations that are both abstract and highly personal, including loss of support, services, love, companionship, affection, society, and sexual relations.") (internal quotation marks and citations omitted).

It is also the jury's role to assess witness credibility. *See Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418-19 (2d Cir. 2011) ("[W]here, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of

justice."); *Batchu*, 56 A.D.3d at 403.  Thus, "[t]he credibility of the witnesses, the truthfulness and accuracy of the testimony, whether contradicted or not, and the significance of weaknesses and discrepancies are all issues for the trier of the facts."  *Sorokin v. Food Fair Stores, Inc.*, 51 A.D.2d 592, 593 (2d Dep't 1976); *see also Pahuta*, 997 F. Supp. at 385 (noting that "[t]he jurors had the opportunity to assess the testimony of numerous physicians, the plaintiff, the plaintiff's mother, with whom he resides, as to plaintiff's pain, limitations and quality of life.  I found them to be attentive throughout the trial.").

Finally, the burden of proving that a jury's verdict should be vacated under CPLR § 5501(c) lies with the movant.  *See Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640, 660 (E.D.N.Y. 1997) ("A general assumption under the Constitution that jury verdicts should stand unless there is a good reason to modify them, strongly suggests the burden of proof should lie with the party challenging the verdict.").  And a damages verdict must not be disturbed unless the court is "assur[ed]" that the verdict "lies beyond the pale of non-material deviation."  *Id.*

Plaintiff cannot meet that burden here.  Nothing in the record supports a conclusion that the jury did not act within the scope of its role in assessing the evidence presented to it and determining the appropriate amount of damages to assign Mr. Champagne's pain and suffering, Plaintiff's loss of consortium, and the two children's damages.  Indeed, the Court commented on the attentiveness and diligence of the jury.  12/13/20212 Trial Tr. at 3132 (Court); c*f. Pahuta*, 997 F. Supp. at 385 (noting attentiveness of jury).  The jury deliberated over the course of three days and asked multiple questions during those deliberations.  *See* 12/10/2012 – 12/12/2012 Trial Tr.  Significantly, Plaintiff does not—and cannot—argue that the jury did not adequately assess the evidence presented to it.

Further, the jury was in the best position to assess the credibility of the witnesses presented at trial and the weight to afford their testimony, as multiple instructions the jurors heard prior to their deliberations emphasized.  For example, the Court instructed that if the jury finds a witness willfully testified falsely on one issue, it can disregard the witness's testimony on other issues.  12/10/2012 Trial Tr. at 3091 ("If you find that any witness has willfully testified falsely as to any material fact, that is, as to an important matter, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact, is likely to testify falsely about everything.").  In addition, in determining what weight to give the testimony of Plaintiff and her two children, the jury was instructed that they may consider the fact that all three witnesses stood to gain financially through their testimony.  12/10/2012 Trial Tr. at 3093-94 ("Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.").  The jury also was permitted to discredit testimony which was impeached on cross-examination.  12/10/2012 Trial Tr. at 3092 ("If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.").

The jury is presumed to have followed all of these instructions.  *See Britt v. Garcia*, 457 F.3d 264, 272 (2d Cir. 2006) ("It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge.")  *Pahuta*, 997 F. Supp. at 384 ("Additional amounts which plaintiff claims should have been awarded could appropriately have been rejected on the grounds that the jury gave more credence to defendant's witnesses than to plaintiff's.").  And, in light of that presumption and the record in this case, Plaintiff's motion for a new trial should be denied.

4

Indeed, each of the jury's instructions concerning the credibility and weight to afford to witnesses' testimony likely played a role in the jury's deliberations, particularly with respect to the testimony of Plaintiff and her two children.  For instance, Plaintiff testified that she was unaware of the link between smoking and lung cancer until 1985, even though she began a master's degree program in health education in 1983.  11/15/2012 Trial Tr. at 224, 237, 373-75.  She also went through great pains in front of the jury to attempt to reword the hypnotherapy form Mr. Champagne had completed, stating that he had made no prior attempts to quit smoking, in order to make his handwritten response comport with her theory of the case.  11/15/2012 Trial Tr. at 380-83.  Similarly, Jennifer Champagne attempted to tell the jury that the reason she became a lawyer was to pursue this lawsuit for her father, drawing an objection from defense counsel, which the Court sustained.  11/16/2012 Trial T. at 468.  And at least once, Billy Champagne was impeached with prior inconsistent testimony.  11/20/2012 Trial Tr. at 943-45.

The jury must be presumed to have considered all of this testimony of Mr. Champagne's immediate family members when assessing the credibility of these witnesses on damages, and the Court may not second-guess the jury's determination.  Plaintiff's motion, however, improperly presumes that the jury was bound to accept as true *all* of the testimony of Plaintiff and her two children insofar as it relates to the damage items that Plaintiff challenges.  This approach gets it backwards.  It was the jury's role to assess credibility and weight of witness testimony, and it was free to disregard the testimony of any or all of Plaintiff's witnesses that it found to be incredible on any material issue.  In light of the primacy of Plaintiff's witnesses' credibility in arriving at necessarily amorphous and subjective damage determinations at issue on this motion, Plaintiff has not overcome her burden to prove that any of the damages awards she

5

challenges should be disturbed. *See Geressy*, 980 F. Supp. at 660 (noting that the party seeking

to disturb a verdict must show that the verdict "lies beyond the pale of non-material deviation").

## II. The Jury's Damage Awards Were Supported By The Factual Record Presented At Trial.

Even putting the critical credibility issues to the side, as Plaintiff improperly does, the

entire record amply supports the challenged damages determinations here. Damages awards

should not be disturbed if the jury reasonably could have concluded from the evidence presented

that the amount awarded was appropriate. *See Pahuta*, 997 F. Supp. at 385 ("The catastrophic

and permanent nature of plaintiff's injury is undisputed. However, the testimony as to the degree

of pain experienced by the plaintiff and to potential for future complications was equivocal.");

*see also Colao v. Brightwater Towers, Inc.*, 88 A.D. 2d 580 (2d Dep't 1982). The court in

*Pahuta* affirmed what the plaintiff argued was an inappropriately low damage award for

"complete and permanent paraplegia, with attendant loss of control of his bladder and bowels."

*Id.* The injured party also continued to have to see a specialist for his pain management. *Id.*

The court recognized the judicial truism that "[d]eference must be accorded the interpretation of

the evidence by the jury if there is credible evidence sufficient to support that interpretation, even

if other evidence exists in the record which would support a contrary conclusion." *Id.* (citations

omitted). Facts presented during trial, including evidence that plaintiff was prescribed a "very

low dose" of pain medication, physician notes that plaintiff was doing "fairly well" given his

condition, and describing his condition as "stable," were sufficient for the court to conclude that

the jury's verdict was supported by the record. *Id.*

The same holds true for jury awards other than for pain and suffering—if the award is

reasonably supported by the evidence presented at trial, a court should not disturb the verdict.

*See Miller*, 1993 U.S. Dist. LEXIS 9009, at *5. The court in *Miller*, for example, sustained an

award of $0 for loss of consortium to the wife of an injured party.  In doing so, the court pointed

to the lack of evidence bearing on loss of consortium:

> The only proof presented on plaintiff [wife's] claim for loss of
> consortium was her own testimony.  However, her testimony
> focused on her husband's pain and suffering, a reduction in his
> stamina and a greater frequency of illness.  There was no testimony
> whatsoever as to any loss of support, services, companionship or
> society.

*Id.* at 6.

As these decisions illustrate, the range of reasonableness for a jury's determination is

determined by reference to the factual record adduced at trial, rather than some abstract concept

of what damages should be assigned for certain types of injuries.

### A. The Facts In Evidence Support The Jury's Award of $25,000 For Mr. Champagne's Pain And Suffering.

The jury's award of $25,000 for Mr. Champagne's pain and suffering does not deviate

materially from what would be reasonable compensation under the facts in evidence.  It certainly

does not "shock the conscience."[3]  Under either standard, however, there is no ground for

disturbing the challenged awards here.

The record here is not so one-sided on Mr. Champagne's pain and suffering to permit

disturbing the jury's determination.  Contrary to Plaintiff's argument that Mr. Champagne

suffered "approximately nine months of pain and suffering from lung cancer" (*See* Pl.'s Mot. at

---

[3] CPLR 5501(c)(3) applies only to motions for additur or remittitur, that is, a motion "in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award."  The Court in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996), dealt with a remittitur motion in an action governed by New York law and held that the standard set forth in CPLR 5501(c)(3) applied to that motion.  Plaintiff here is not making a motion for additur—she is asking for a new trial, not a new trial unless ATC stipulates to a court-ordered amount in excess of the verdict—and so by its terms CPLR 5501(c)(3) does not apply here.  There is also a good reason Plaintiff is not making a motion for additur. Unlike remittitur, additur is unconstitutional because it violates the Seventh Amendment to order an increase in the amount of damages found by the jury.  *See Dimick v. Schiedt*, 294 U.S. 474, 486-87 (1935).  Plaintiff's motion should therefore be subjected to the traditional "shock the conscience" standard, not the statutory standard set forth in CPLR 5501(c)(3).

11), the jury reasonably could have concluded on the basis of his medical records in evidence

that any pain he experienced was relatively well-managed until the last few weeks of his life:

- **October 17, 2003 (a few weeks prior to diagnosis):** "His symptom of pain is now under reasonably good control on symptomatic medication."; "Recently, however, he has been using oxycodone/APAP 10/650 one half-tablet as needed with reasonably good control of pain."; "At the present time, the patient's pain is under reasonable control with the analgesia described above." (Trial Exhibit Joint 22, Bates 381711.00002-00006).

- **October 20, 2003 (a few weeks prior to diagnosis):** "Is patient dissatisfied with pain management?  No." (Trial Exhibit Joint 4, Bates 381685.00022-00027).

- **November 3, 2003:** Diagnosed.

- **November 20, 2003 (a few weeks after diagnosis):** "He continues on MS Contin 15 mg every 12 hours, tolerating it well, with good control of pain."; "Again pain is under much better control.  He is not using the oxycodone pain medicine at this time."; "Although the patient's weight continues down, he feels that it has stabilized in the past couple of days and he and his wife really are remarkably pleased with his ability to eat now and his general sense of well being."; "Despite his weight loss, the patient really looks quite robust and healthy.  He is in pretty good spirits and his affect is much less depressed." (Trial Exhibit Joint 25, Bates 381717.00024-00026).

- **February 24, 2004 (3 months after diagnosis):** "His pain has improved considerably." (Trial Exhibit Joint 25, Bates 381717.00036-00037).

- **March 18, 2004 (4 months after diagnosis):** "He has no pain at the present time"; "The patient is participating fully in activities of daily living."; "Regarding MS Contin, I have asked him to decrease the dose now to just 15 mg once daily for one week, then discontinue MS Contin if he remains pain-free." (Trial Exhibit Joint 25, Bates 381717.00038-00040).

- **May 4, 2004 (6 months after diagnosis):** "Cardiac: No chest pain on exertion or dizziness."; "Musculoskeletal:  No focal bone pain or joint ache."; "General condition: Good."  (Trial Exhibit Joint 22, Bates 381711.00038–00039).

Indeed, despite Plaintiff's characterization of Mr. Champagne's pain, the medical records

support an increase in continuing pain *only* during the last two weeks of his life.  (*See, e.g.,* Trial

Exhibit Joint 22, Bates 381711.00048-00049, June 11, 2004 (2 weeks before Mr. Champagne's death) medical record noting that "[h]e rates his pain as 6-7/10 and fatigue as 2-3/10."). On this basis, the jury reasonably could have determined that an award of $25,000 (or approximately $12,500 per week for each week of continuous pain and suffering supported by the medical records) was adequate.

### B. The Facts In Evidence Support The Jury's Award of $20,000 For Plaintiff's Loss of Consortium.

The evidence at trial, including Plaintiff's own testimony, supports the jury's $20,000 award for Plaintiff's loss of consortium. When questioned about how Mr. Champagne's illness and death affected her, Plaintiff responded with examples of the "role reversal" that she experienced: she had to drive her husband while he normally was the driver; she had to help him dress; and she had to be the family's decision-maker. In reference to her marital relationship with Mr. Champagne, Plaintiff only briefly noted that "I mean, as far as, you know, like even intimacy. It was very difficult. The true meaning of, I think a relationship, just being able to sit with your partner and have that connection. So our level of intimacy had changed, obviously, over that period of time." 11/15/2012 Trial Tr. at 325-27.

Plaintiff's testimony focused on Mr. Champagne individually, not on their changing relationship as a married couple, or the losses she experienced. Plaintiff may now claim that she suffered greater losses than what she explained to the jury, but that is irrelevant. What is relevant is whether the jury's award of $20,000 for Plaintiff's loss of consortium materially deviates from what would be reasonable based on the evidence presented at trial. *See Miller*, 1993 U.S. Dist. LEXIS 9909, at *5. And, on the basis of the paucity of evidence related to Plaintiff's claimed loss of consortium, the $20,000 award was reasonable and should not be disturbed.

**C.      Plaintiff Asked For Damages Not To Be Awarded To Mr. Champagne's Children, And The Facts In Evidence Support The Jury's Decision.**

Plaintiff also asks this Court to disturb the jury's verdict because the jury did not award damages to Jennifer and Billy Champagne.  This request is ironic considering that Plaintiff's counsel underscored for the jury they were "free to do whatever you want on this" and then expressly asked the jury *not* to award damages specifically to Plaintiff's children:

> Now, let's look at the different categories. There was economic loss.  And you all are free to do whatever you want on this obviously, but I would suggest that if you award economic loss which has not been disputed the economic loss, that you put it on the Eileen Clinton line.  So the mother of Bill's children would get the award of the money and would be able to use it in the way that would be appropriate for a widow to use the money to support herself and her children.

12/7/2012 Trial Tr. at 3042.  Thus, the jury's decision to award $1.3 million in economic damages to Eileen Clinton and not specifically award any damages to either of the children was what Plaintiff in fact requested from the jury.  She cannot now change her mind to try to pump up the overall damages award.  *Cf. Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965) (reinstating jury verdict in favor of defendants and noting that "plaintiffs' counsel . . . urged quite ardently that the jury should award all or nothing.  The jury having adopted the latter suggestion, plaintiffs cannot now complain because their quite understandable strategy backfired.").

Further, testimony presented during trial supports the jury's decision not to award damages to the children.  During Jennifer Champagne's testimony, the jury learned that she was already in college when Mr. Champagne developed lung cancer, that she currently lives on her own, and that she is a successful personal injury attorney in New York City.  11/16/2012 Trial Tr. at 439-40, 465.  During Billy Champagne's testimony, the jury learned that he earned a Master's Degree and has a stable career at a local college.  11/20/2012 Trial Tr. at 918-19.  Jennifer was

an adult at the time of Mr. Champagne's death and Billy was 19.  11/16/2012 Trial Tr. at 439 (Jennifer 21 years old); 11/20/2012 Trial Tr. at 918 (Billy 19 years old); 12/10/2012 Trial Tr. at 3082.  While this would not bar the jury from awarding damages to Mr. Champagne's children, it is certainly something the jury could consider when determining "the economic value of William Champagne to Eileen Clinton, Jennifer Champagne, and William Champagne III on June 25, 2004, the day on which William Champagne died."  12/10/2012 Trial Tr. at 3081; *see also id.* at 3083 (instructing the jury that Mr. Champagne was not legally obligated to contribute to the support of any child who became 21 years old or became self-supporting).  Additionally, although both Jennifer and Billy offered poignant testimony about the sadness they felt at their father's passing, the jury was specifically instructed not to consider this in determining whether to award them any damages.  12/10/2012 Trial Tr. at 3081 ("You may not consider or make any award for sorrow, mental anguish, injury to feelings, or loss of companionship.").

In light of Plaintiff's own request that the jury award all of the economic damages to Plaintiff as well as the testimony of Mr. Champagne's children, Plaintiff has not carried her burden to prove that the jury's verdict should be disturbed.

**D.     The Cases Plaintiff Cites Do Not Require This Court To Upset The Jury's Determination.**

Finally, the cases Plaintiff cites do not support upsetting the jury's damages award. Plaintiff first relies on *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992), for the blanket proposition that a $25,000 jury award for pain and suffering will always warrant a new trial on damages under CPLR § 5501(c).  *See* Pl.'s Mot. at 11-14.  Although the court ordered a new trial in that case, in no way did the court hold that a $25,000 pain and suffering award would mandate a new trial on damages in all future cases under New York law.  The court in *In re Brooklyn Navy Yard* briefly noted that there was evidence of "intense pain" and a

"humiliating loss of bladder and bowel control."  971 F.2d at 853.  Absent from that court's

analysis, however—and essential in this Court's determination—is any discussion of

contradictory evidence bearing on pain and suffering or the credibility of the witnesses offering

testimony on pain and suffering.

Furthermore, despite Plaintiff's attempt to create the impression that the Court here must

conform the jury's pain and suffering award to awards in other cases, "the amount of damages

awarded or sustained in prior cases involving similar injuries is not binding on courts."  *In re*

*New York Asbestos Litig.* (Dummit), 36 Misc. 3d 1234A, 2012 N.Y. Misc. LEXIS 4057, at \*73

(Sup. Ct. N.Y. Cty. 2012) (cited in Plaintiff's Motion).  Even when the diseases are similar, "a

precise comparison of injuries is virtually impossible."  *Id.* at \*74.  And the several cases that

Plaintiff relies upon where courts have reduced excessive awards, or not disturbed an award, do

*not* stand for the proposition that the reduced or sustained award is the bare minimum that should

be deemed adequate.  *See* Siegel, N.Y. Prac. § 407 (5th ed. 2011) (noting that remittitur

represents the maximum amount found permissible on the facts).   Plaintiff's cases are simply

not support for overturning the jury's awards here on the ground that they are purportedly

inadequate, especially in light of the fact that the Legislature's main purpose in enacting CPLR

5501(c) was to curb excessive damages awards, not to increase them.  *See* Siegel, N.Y. Practice

Commentary, § 5501 at 25 (1995) ("[T]he problem area really aimed at by the amendment is the

excessive verdict that the defendant seeks to lower rather than the inadequate verdict that the

plaintiff seeks to raise . . . .").

While Plaintiff's brief cites to cases where the facts supported a higher award of pain and

suffering damages, New York courts have also affirmed relatively low pain and suffering awards

in wrongful death actions.  *See, e.g.*, *Tucker v. City of New York*, 54 A.D.2d 930 (2d Dep't 1976)

(affirming $20,000 pain and suffering award in wrongful death action).  This disparity in damage awards across the cases is not surprising and only shows that there is a wide range of acceptable awards for pain and suffering.  The disparate awards also undoubtedly reflect the inherently case-specific evidence, including witness credibility determinations juries make every day in federal and state courtrooms across New York.  Such determinations are uniquely the province of juries and should not be readily tampered with after the fact.

Nor do the cases cited by Plaintiff for her loss of consortium claim support a new trial on damages only.  In fact, several of the cases Plaintiff cites would support *affirming* the jury's determination when applied to the facts of this case.  For example, in *Wild v. Catholic Health System*, 85 A.D.3d 1715 (4th Dep't 2011), the court ordered a new trial on damages only based on the jury's award of $500,000 for loss of consortium unless the plaintiff agreed to a remittitur to $200,000.  *Id.* at 1718-19.  In doing so, the court noted that "an award of $200,000 is the *maximum* amount that the jury could have awarded" to the wife of the decedent in the wrongful death action.  *Id.*  (emphasis added).  By stating the *maximum* loss of consortium damages that would be appropriate for a widow in a wrongful death action, the court also implicitly acknowledged that lower amounts would be appropriate as well.  Furthermore, in *Garrison v. Lapine*, 72 A.D.3d 1441 (3d Dep't 2010), cited by Plaintiff, although the court upheld the jury's award of $400,000 for loss of consortium, it did so only after noting that "[t]o successfully challenge a determination as to the amount of damages to be awarded, the record evidence must preponderate in favor of the moving party to such a degree that the verdict could not have been reached on any fair interpretation of the evidence."  *Id.* at 1442 (internal quotation marks and citations omitted).  In short, because the record evidence here supports the jury's award of $20,000, the cases cited by Plaintiff do not require the Court to disturb that award now.

Finally, the cases Plaintiff cites in arguing for a higher damage award for Mr. Champagne's children do not support a new trial on damages only given the facts of this case. Put simply, the only thing Plaintiff's cases show is that adult children *may* recover for loss of parental care and guidance—not that they *must*. *See* Pl.'s Mot. at 19-20. In fact, Plaintiff's cases—and her counsel's express statement in closing argument that the jury is "free to do whatever you want on this, obviously"—show just the opposite. *See Motelson v. Ford Motor Co.*, No. 2009-04215, 2009-06707, 2012 N.Y. App. Div. LEXIS 8623, at *12 (2d Dep't Dec. 19, 2012) (cited by Plaintiff, but affirming jury award of zero damages to adult children for pecuniary damages). A new trial on damages on this basis thus would be improper.

## III.    Liability And Damages Cannot Be Severed.

Finally, the issues of liability and damages cannot be severed in this case, precluding any new damages-only trial. Where "the question of damages . . . is so interwoven with that of liability," then "the former cannot be submitted to the jury" without creating an injustice. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 494 (1931) (holding that the issue of damages could not be severed from the issue of liability); *see also Blakeslee v. Ruffo*, No. 97-9362, 2000 U.S. App. LEXIS 11013, at *10 (2d Cir. 2000) (affirming district court's decision to grant a new trial on liability and damages "since the issues of liability and damages [were] closely related"). Here, the jury considered liability and damages wholesale in a unitary trial proceeding, and separating the two now would be unjust. Thus, if the Court concludes that any portion of the verdict must be set aside, then the entire verdict must be set aside.

The Second Circuit analyzed this issue in *Caskey v. Village of Wayland*, 375 F.2d 1004 (2d Cir. 1967). There, the decedent "was hospitalized for 18 days with serious injuries"; "was never unconscious during this period"; and "for the first 7 days no pain killers could be administered because of the head injuries he had sustained." *Id.* at 1007. The jury awarded

$1,100 for the decedent's pain and suffering.  *Id.*  Considering the facts and the jury charge, which the Second Circuit found to be inappropriate, the Court concluded that the pain and suffering award was inadequate.  *Id.*

That, however, did not end the analysis.  The Court next considered whether a new trial could be restricted to damages only.  The Court first noted that the trial had not been bifurcated.  To the contrary, "issues of liability and damages were tried together."  *Id.* at 1010.  Further, "the small judgment returned by the jury may well indicate that the jurors were not unanimous in their finding of negligence, and that the verdict represented a compromise on that issue."  *Id.*  Because of these factors, the Court concluded that "it would be unjust to the defendants to restrict the new trial to the issue of damages."  *Id.*; s*ee also Brooks v. Brattleboro Mem'l Hosp*., 958 F.2d 525, 531 (2d Cir. 1992) ("[B]ecause the issues of liability and damages in this case are inextricably intertwined, we hold that the retrial must be on all issues."); *Mekdeci v. Merrell Natl. Labs.*, 711 F.2d 1510, 1515 (11th Cir. 1983) (affirming district court's decision to hold a new trial on all issues, rather than one limited to damages); *Vizzini v. Ford Motor Co*., 569 F.2d 754, 762 (3d Cir. 1977) (reversing trial court's decision to hold trial on damages only and remanding for trial on liability and damages); *Vidrine v. Kansas City So. Ry.*, 466 F.2d 1217, 1226 (5th Cir. 1972) (remanding for new trial on both liability and damages where damages were "grossly inadequate").

The same is true here.  For four weeks, the jury heard co-mingled testimony on liability and damages.  In fact, the three witnesses on whom Plaintiff relies for her Motion (herself and her two children) were the central witnesses as to both liability and damages.  For example, all three testified about Mr. Champagne's alleged addiction to cigarettes as well as alleged damages. *See generally* 11/15/2012 Trial Tr.; 11/16/2012 Trial Tr.; 11/20/2012 Trial Tr.  As discussed, a

central function of the jury was to evaluate the credibility of these witnesses, and the jury was properly instructed that it could reject their trial testimony in whole or in part, based on such factors as the nature of their testimony and their financial interest in the outcome of the case. *Supra* at 3-5.

Indeed, as explained above, parts of the testimony of Plaintiff and her two children were difficult to believe.  *Supra* at 4-5.  Plaintiff testified that she was unaware of the link between smoking and lung cancer until 1985, and attempted to re-write a medical record in which Mr. Champagne indicated he had made no prior attempts to quit smoking; Billy Champagne was impeached with prior inconsistent testimony; and Jennifer Champagne claimed she became a lawyer to bring this lawsuit on behalf of her father.  11/15/2012 Trial Tr. at 237, 373-75, 380-83; 11/20/2012 Trial Tr. at 943-45; 11/16/2012 Trial Tr. at 468.  The credibility issues surrounding these and other issues likely colored the jury's view as to the credibility of these witnesses generally, including with respect to their testimony related to damages.  Severing liability from damages—effectively bifurcating the trial—after the jury has delivered its verdict as to liability and damages would be unjust.

Further, here, like in *Caskey*, "the small judgment returned by the jury may well indicate that the jurors were not unanimous in their finding of [liability], and that the verdict represented a compromise on that issue."  *Caskey*, 375 F.2d at 1010.  "[A] new trial on damages only is not proper if there is reason to think that the verdict may represent a compromise among jurors . . . ."  Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2814, at 155 (1995).  Liability was hotly contested here throughout the trial.  For example, at all times, ATC maintained that information about the risks of smoking was ordinarily discoverable, and asserted that Mr. Champagne's smoking-related injuries were a function of his choices regarding his

smoking behavior and not his inability to quit, thus negating liability.  *Cf. Hatfield v. Seaboard Airline RR Co.*, 396 F.2d 721 (5th Cir. 1968) (remanding for a new trial on all issues, in part, because "the issue of liability was close and hotly contested"); *Rosenberg v. Aeschliman*, 2004 U.S. Dist. LEXIS 10406, at *13 (S.D.N.Y. June 4, 2004) (ordering a new trial on liability and damages where "at least some issues were heavily contested").

The jury's deliberations point to a compromised verdict as well.  The jury took nearly three days to deliberate and, during that time, asked multiple questions.  *See* 12/10/2012 – 12/12/2012 Trial Tr.; *cf. Mekdeci v. Merrell Natl. Labs.*, 711 F.2d at 1515 (noting that the jury took four days to deliberate and sent multiple communications); *Hatfield*, 396 F.2d at 723 (emphasizing that jury deliberated for two days).  At the end of the first day of deliberations, the jury foreperson also warned the Courtroom Deputy to "remove all sharp objects from the jury room tomorrow"—an obvious reference to the tension during deliberations.  12/10/2012 Trial Tr. at 3111 (noting this point on the record).  Taken together, these circumstances reflect that there was disagreement in the jury room on liability and, as a compromise in order to achieve a unanimous verdict, the jury may have rendered a smaller damages award in certain categories.  Thus, any new trial cannot sever damages from liability without violating ATC's rights, and ignoring the give-and-take dynamic that likely controlled this jury's deliberations (and the deliberations of many juries for that matter).

## IV.   Pre-Judgment Interest Should Be Calculated From A Reasonable Intermediate Date Between Date Of Death And Date Of Judgment.

In her post-trial motion, Plaintiff seeks, *inter alia*, pre-judgment interest on the wrongful death damages from June 25, 2004, the date of Mr. Champagne's death, to December 19, 2012, the day before the judgment was entered.  Pl.'s Mot. at 2-3.  Under New York law, however, pre-judgment interest on a wrongful death award for past losses should be calculated from a

reasonable intermediate date pursuant to CPLR § 5001(b).  *Milbrandt v. A. P. Green Refractories Co.*, 79 N.Y.2d 26, 37-38 (1992).  *Accord Woodling v. The Garrett Corp.*, 813 F.2d 543, 561 (2d Cir. 1987).  Here, a reasonable intermediate date would be September 21, 2008, which is the medial date between date of death and date of judgment.  *See Garcia v. O'Keefe*, 2004 N.Y. Misc. LEXIS 1827, at *3 (Sup. Ct. N.Y. Co. Sept. 9, 2004), *reversed on other grounds*, 2006 N.Y. App. Div. LEXIS 13733 (1st Dep't Nov. 21, 2006).

    *Milbrandt v. A. P. Green Refractories Co.*, 79 N.Y.2d 26, 37-38 (1992), controls this issue.  That decision involved appeals from two cases, *Milbrandt* and *Schmertz v. Presbyterian Hosp.*, 567 N.Y.2d 691 (1st Dep't 1991).  In both actions, plaintiffs recovered wrongful death damages after jury trials.  79 N.Y.2d 26, 31-34.  The damages included past pecuniary loss, "including the portion of decedent's earnings he would have applied to the care and support of his wife and children" from date of death to date of verdict,[4] pre-verdict loss of parental guidance, and damages for losses to occur in the future.  *Id*. at 32-34.  In both cases, the trial courts awarded pre-judgment interest on the entire awards and calculated the interest from date of death.  *Id*.  The Appellate Divisions affirmed both judgments and the Court of Appeals reversed.

    With respect to the awards for past losses, the Court in *Milbrandt* held that interest should be calculated pursuant to CPLR § 5001(b).  *Id*. at 37-38.  *Accord Woodling*, 813 F.2d at 561. Section 5001(b) provides that "interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred.  Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single

---

[4] Because, in this case, judgment was entered only eight days after the verdict, no distinction will be made between "pre-verdict" and "pre-judgment" losses.

reasonable intermediate date."  The *Milbrandt* Court ruled that because the wrongful death pre-judgment losses did not all simultaneously occur as of the date of death, to compute interest from the date of death would result in an unfair windfall to the plaintiff:

> When losses are ongoing and spread over the period from the date of decedent's death to the date of the verdict, the damages may be viewed as resulting from a series of discrete losses occurring after decedent's death.  If interest is computed as though the losses all occurred simultaneously at the time of decedent's death—interest is necessarily included for damages which have not yet been sustained.  These amounts obviously do not represent interest earned on compensation for losses actually incurred and, if added, are a pure windfall.

79 N.Y.2d at 37.

With respect to future losses, the Court held that "no pre-verdict interest should be added to an award for post-verdict losses if the award has not been discounted to a time prior to the award. . . ."  *Id*. at 31.  In both *Milbrandt* and *Schmertz*, the awards for post-verdict losses were discounted to date of verdict.  *Id*. at 32, 34.  In *Milbrandt*, the jury was instructed to discount any award for post-verdict losses to the day of verdict.  *Id*. at 32.  In *Schmertz*, the Court noted that although the jury was not instructed to discount its verdict, plaintiff's expert economist had discounted the future damages to the date of verdict.  *Id*. at 34.  Thus, the Court found that "it is clear that the jury awards, if discounted at all, were discounted only to the date of the verdict, and not earlier."  *Id*.  As such, the Court held that no pre-verdict interest should be added to the awards for future losses.  *Id*. at 36.  *Accord Woodling*, 813 F.2d at 560.

Interest in this case should similarly be calculated pursuant to CPLR § 5001(b), by choosing a reasonable intermediate date from which interest should be computed.  In wrongful death actions such as this one, interest should be calculated from the mid-point between the date of death and the date of judgment.  *Garcia*, 2004 N.Y. Misc. LEXIS 1827 at *3 (holding that interest on a wrongful death award for pre-verdict losses should be computed from the mid-point

19

between the date of death and the date of judgment).  *See also Harris v. New York City Health and Hosp. Corp.*, 272 A.D.2d 372, 374 (2d Dep't 2000), *appeal denied*, 95 N.Y.2d 770 (2000) (holding that Supreme Court improperly included pre-verdict interest on the award for past economic loss from the date of the plaintiff's death, rather than from the date or dates the damages were incurred); *Bloom v. City of New York*, 202 A.D.2d 465, 465 (2d Dep't 1994) (holding that "not all of the interest awarded on the wrongful death cause of action should have been calculated from the date of death); *Perez v. Columbia Operating Co., Inc.*, 203 A.D.2d 347, 348 (2d Dep't 1994) (holding in action for wrongful death that "the interest on pre-verdict damages must be recomputed pursuant to CPLR 5001(b) so that interest is only paid from the date that a particular item of damage was incurred or upon all of the damages from a single reasonable intermediate date."); *Hudson v. Manhattan and Bronx Surface Transit Operating Author.*, 188 A.D.2d 355, 355 (1st Dep't 1992) (holding lower court erred in awarding prejudgment interest); *Hynes v. State*, No. 88481, 2001 BL 828, *11 n.7 (N.Y. Ct. Cl. Oct. 18, 2001) (choosing an approximate midpoint date for pre-judgment interest); *Alexander v. State*, No. 97838, 2001 BL 856, *6 n.5 (N.Y. Ct. Cl. Feb. 2, 2001) (calculating interest on wrongful death award from "a single reasonable intermediate date").

The mid-point between date of death and date of judgment is September 21, 2008.  As noted by Plaintiff, the time between Mr. Champagne's date of death (June 25, 2004) and the day before the date of judgment (December 19, 2012), is 8 years and 177 days.  Pl.'s Mot. at 2.  The medial date would be 4 years and 89 days or 4.24 years (4 years and 89/365 days).  Pre-judgment interest calculated from September 21, 2008 is $496,080 ($1,300,000 x .09 x 4.24).

By calculating interest from the medial date between the date of death and the date of judgment, the Court will comport an interest award with the Court of Appeals' decision in

*Milbrandt* and avoid awarding Plaintiff an unfair windfall.  *See Milbrandt*, 79 N.Y.2d at 37.

Plaintiff's economist, Frank Tinari, Ph.D., testified that lost income was the largest component of

plaintiff's loss.  11/26/12 Trial Tr. at 1000.  And most of the lost income represents pre-judgment

losses.  Mr. Champagne would have been 62 years old at the time of the verdict and Dr. Tinari

testified that his statistical retirement age was 63.7.  *Id*. at 966.

Further, although the jury here did not itemize pre-judgment and post-judgment losses,

Plaintiff benefits to the extent the jury's verdict may include any amounts for future pecuniary

loss.  Like the plaintiffs in *Milbrandt* and *Schmertz*, Plaintiff here is not entitled to interest on

future losses because the verdict here was not discounted to a time prior to the award.  Although

the jury was not instructed to discount its verdict, Dr. Tinari discounted his amounts for future

loss to the date of trial.  *Id*. at 973-75, 981.  Thus, as in *Schmertz*, if the award was discounted at

all, it was discounted only to the date of trial and no earlier.  *Milbrandt*, 79 N.Y.2d at 34.  As

such, Plaintiff is not entitled to pre-judgment interest on any part of the verdict that constitutes

future losses.  *Id*. at 36.  Nonetheless, because Plaintiff here will receive interest on the entire

wrongful death award—including any amount that may be for future losses—she will receive

more than if interest were awarded on only the pre-judgment losses after the post-judgment

losses were deducted.  For these reasons, the Court should award pre-judgment interest

calculated from September 21, 2008, and not from date of death.

## CONCLUSION

For the foregoing reasons, ATC respectfully requests that the Court enter an order

denying Plaintiff's Motion for a new trial on certain elements of damages only in its entirety, and

calculating any pre-judgment interest from September 21, 2008, not from the date of death.

Dated: New York, New York
   February 7, 2013

Respectfully submitted,

JONES DAY

By: /s/ Harold Gordon
Harold K. Gordon
(hkgordon@jonesday.com)
Robert Iscaro
(riscaro@jonesday.com)
222 E. 41st Street
New York, NY 10017
(212) 326-3740

Stephen J. Kaczynski
(skaczynski@jonesday.com)
Jacqueline M. Pasek
(jmpasek@jonesday.com)
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7113

Kimberly A. Jolson
(kajolson@jonesday.com)
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215
(614) 469-3939

*Attorneys for Defendant*
*Brown & Williamson Holdings, Inc.,*
*as successor by merger to*
*The American Tobacco Company*